Dustin Merryfield
1301 K264 HWY
Larned Kansas 67550

Telephone:     (620) 285-4660 ext. 4



FILED

FEB 13 2023

Clerk, U.S. District Court
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Dustin J. Merryfield**. Plaintiff<br><br>v.<br><br>**Kelsey Fleet, Jason Jester, Xan Bowersox, Pam Middleton, Elizabeth Keller, Daphne Norez, Dr. Rebecca Farr, Keri Applequist, Linda Kidd, Kristina Rose, Sharon Surface, Seth Osborne, Dr. Christine Mohr, Gabriel Rop, Laura Howard, State of Kansas, Jane and John Does**, et al. in their individual, personal and official capacities,, Defendants. | **Case No.**   23-3041-JWL<br>(To be supplied by the Clerk)<br><br><br>CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983 |

### A.     JURISDICTION

1)     Dustin J. Merryfield, is a citizen of Kansas who presently resides at 1301 K264 HWY, Larned Kansas 67550, in the Sexual Predator Treatment Program located on the campus of the Larned State Hospital.

2)     Defendant Kelsey Fleet is a citizen of Kansas, and is employed as a therapist for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes □ No. If your answer is "Yes," briefly explain:

1

Defendant Kelsey Fleet was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

3) Defendant Jason Jester is a citizen of Kansas, and is employed as a therapist for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

Defendant Jason Jester was exercising the powers granted to him under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon him.

4) Defendant Xan Bowersox is a citizen of Kansas, and is employed as a property officer for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

Defendant Xan Bowersox was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

5) Defendant Pam Middleton is a citizen of Kansas, and is employed as a therapist for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

Defendant Pam Middleton was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

6) Defendant Elizabeth Keller is a citizen of Kansas, and is employed as a property officer for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

Defendant Elizabeth Keller was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

7) Defendant Daphne Norez is a citizen of Kansas, and is employed as a therapist for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this

complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

> Defendant Daphne Norez was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

8)   Defendant Dr. Rebecca Farr is a citizen of Kansas, and is employed as a director for the State Security Hospital. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law?   ■ Yes  ☐ No. If your answer is "Yes," briefly explain:

> Defendant Dr. Rebecca Farr was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

9)   Defendant Keri Applequist is a citizen of Kansas, and is employed as an assistant Clinical Program Director for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

> Defendant Keri Applequist was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

10)   Defendant Linda Kidd is a citizen of Kansas, and is employed as an administrator for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

> Defendant Linda Kidd was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

11)   Defendant Kristina Rose is a citizen of Kansas, and is employed as a property officer for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

> Defendant Kristina Rose was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

12)    Defendant Sharon Surface is a citizen of Kansas, and is employed as a therapist for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

        Defendant Sharon Surface was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

13)    Defendant Seth Osborn is a citizen of Kansas, and is employed as a therapist for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

        Defendant Seth Osborn was exercising the powers granted to him under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon him.

14)    Defendant Dr. Christine Mohr is a citizen of Kansas, and is employed as a Clinical Program Director for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

        Defendant Dr. Christine Mohr was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

15)    Defendant Gabriel Rop is a citizen of Kansas, and is employed as the Administrative Program Director for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

        Defendant Gabriel Rop was exercising the powers granted to him under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon him.

16)    Defendant Laura Howard is a citizen of Kansas, and is employed as a therapist for the Kansas Sexual Predator Treatment Program. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes ☐ No. If your answer is "Yes," briefly explain:

4

Defendant Laura Howard was exercising the powers granted to her under the Kansas Sexually Violent Predator Act, K.S.A. § 59-29a01 et seq., and the laws of Kansas have conferred upon her.

17) Defendant Jane or John Does are citizens of Kansas, and is employed in various positions for the Kansa Sexual Predator Treatment Program (SPTP). To be identified as the case proceeds and the facts are fully developed. At the times the claims alleged in this complaint arose, was this defendant acting under the color of state law? ■ Yes □ No. If your answer is "Yes," briefly explain:

This Defendant was acting pursuant to the powers and statutory duties delegated to them by Laura Howard in accords with the laws in Kansas.

18) Jurisdiction is invoked pursuant to 28 U.S.C. § 1343; 28 U.S.C. § 1367; and 42 U.S.C. § 1983.

## B.    NATURE OF THE CASE

1) Briefly state the background of your case:

The Defendant(s) have **_voluntarily_** chosen to censor any and all media that Mr. Merryfield has, even though the only requirements under the Act for which Mr. Merryfield is committed states that only sexually explicit material is to be denied. Based on this **_voluntary_** decision of the Defendant(s) Mr. Merryfield seeks a declaration that his rights under the United States Constitution are violated by the egregious and massively intrusive restrictions put in place by the censorship of the Defendant(s).

Mr. Merryfield also raises a constitutional challenge to the face of K.S.A. 59-29a22.

## C.    CAUSE OF ACTION

1) I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations:

A)    Count I:      Due Process Clause of the Fourteenth Amendment of the United States Constitution.

B)    Count II:     Unlawful Censorship under the First Amendment of the United States Constitution.

C)    Count III:    Right to Freedom of Association under the First Amendment of the United States Constitution.

D)    Count IV:     Equal Protection of the Law under the Fourteenth Amendment of the United States Constitution

2) Supporting facts for all counts:

    **A.**    **Facts of Mr. Merryfield**

        **1.**    Mr. Merryfield was tried and committed under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. § 59-29a01 et seq., on or about the year 2000.

        **2.**    Mr. Merryfield has only one diagnosis: Antisocial Personality Disorder.

        **3.**    Mr. Merryfield lives in an individual room in the facility. Concerning this:

        **a.**    The Defendant(s) require that no other individual within the program is allowed into Mr. Merryfield's room.

        **b.**    The door to Mr. Merryfield's room is required to be locked at all times, with only Mr. Merryfield and the staff having a key to enter the room.

        **c.**    There is a small window on Mr. Merryfield's door that is covered with a curtain.

        **d.**    The facility provides Mr. Merryfield with a metal desk, metal cabinet, bed and toilet in the room. The cabinet has different size compartments for storage as does the desk.

        **e.**    When items are stored in the metal cabinet or desk they are not visible from the door.

        **f.**    Mr. Merryfield has an assortment of shelves, storage containers and Yaffa cubes that he keeps all his property in. Most are not visible from the window in the door.

        **4.**    The rules set forth by the Defendant(s) state that if Mr. Merryfield loans out, allows another to borrow use, or even to sell any property he has to another resident he will be severely disciplined and the item involved will be seized and no longer be allowed to own, possess, or use..

    **B.**    **Music Compact Disc (CD) Censorship**

        **1.**    The Defendant(s) media policy (Policy 5.18) defines Music CD's as media. Concerning this:

        **a.** The policy does not define what a music CD is.

**2.**     Per policy 5.18 Mr. Merryfield must have prior approval before receiving a music CD in the mail.

**3.**     Per Policy 5.18 Mr. Merryfield is only allowed to receive music CD's from one of the approved vendors. Concerning this:

> **a.**     The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.
>
> **b.**     Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.
>
> **c.**     The vendors carry little if any music CD's for Mr. Merryfield to purchase.

**4.**     Policy 5.18 does not provide any guidelines or rules as to what would or would not make a music CD appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

> **a.**     Policy 5.18 states that sexually explicit material is not allowed.
>
> **b.**     Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

5.      Policy 5.18 allows for Mr. Merryfield to lose the music CD's for which he received approval for prior to at the whim of any new therapist assigned to him.

6.      Policy 5.18 requires the music CD to have an industry standard rating before it can be approved. Concerning this:

a.      To Mr. Merryfield's knowledge there is no industry standard rating for music CD's.

7.      On August 2, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the music CD by DMX titled "Best of DMX." Concerning this:

a.      Mr. Merryfield presented the request to his therapist Kelsey Fleet.

b.      No approval or denial on the request has been provided to Mr. Merryfield.

c.      No Due Process of any form has been provided.

8.      On August 2, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the music CD by DMX titled "Greatest Hits with a Twist." Concerning this:

a.      Mr. Merryfield presented the request to his therapist Kelsey Fleet.

b.      No approval or denial on the request has been provided to Mr. Merryfield.

c.      No Due Process of any form has been provided.

9.      On September 4, 2020, Mr. Merryfield submitted a CPR-518 Media Request for the music CD by Halsey titled "Manic." Concerning this:

a.      Mr. Merryfield presented the request to his therapist Kelsey Fleet.

b.      On August 2, 2021, Kelsey Fleet denied the music CD.

c.      Kelsey Fleet never issued a rights restriction or any form of Due Process.

10.      On August 2, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the music CD by Skillet titled "Vital Signs." Concerning this:

a.      Mr. Merryfield presented the request to his therapist Kelsey Fleet.

8

      **b.**     No approval or denial on the request has been provided to Mr. Merryfield.

      **c.**     No Due Process of any form has been provided. Mr. Merryfield still waits for some form of Due Process.

    **11.**     On January 18, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the music CD by Lil Troy titled "Sittin' Fat Down South." Concerning this:

      **a.**     Mr. Merryfield presented the request to his therapist Kelsey Fleet.

      **b.**     On August 2, 2021, Kelsey Fleet denied the music CD.

      **c.**     Kelsey Fleet never issued a rights restriction or any form of Due Process. Mr. Merryfield still waits for some form of Due Process.

**C.**    **Book(s) Censorship**

    **1.**     The Defendant(s) media policy (Policy 5.18) defines book(s) as media. Concerning this:

      **a.** The policy does not define what a book is.

    **2.**     Per policy 5.18 Mr. Merryfield must have prior approval before receiving a book in the mail.

    **3.**     Per Policy 5.18 Mr. Merryfield is only allowed to receive book(s) from one of the approved vendors. Concerning this:

      **a.**     The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

      **b.**     Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

      **c.**     The vendors carry little if any books for Mr. Merryfield to purchase.

    **4.**     Policy 5.18 does not provide any guidelines or rules as to what would or would not make a book appropriate for Mr. Merryfield. Instead it leaves

it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

      **a.**     Policy 5.18 states that sexually explicit material is not allowed.

      **b.**     Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

**5.**     Policy 5.18 allows for Mr. Merryfield to lose the book(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

**6.**     Policy 5.18 requires the book to have an industry standard rating before it can be approved. Concerning this:

      **a.**     To Mr. Merryfield's knowledge there is no industry standard rating for book(s).

**6.**     Mr. Merryfield is a published author. Concerning this:

      **a.**     Mr. Merryfield put in a CPR-518 Media Request for the book he authored on August 11, 2022.

      **b.**     The Media request was presented to Jason Jester.

      **c.**     The media request took a total of four months in order to be approved.

**D.**    **Magazine(s) Censorship**

**1.**     The Defendant(s) media policy (Policy 5.18) defines magazine(s) as media. Concerning this:

      **a.** The policy does not define what a magazine is.

2.      Per policy 5.18 Mr. Merryfield must have prior approval before receiving a magazine in the mail.

3.      Per Policy 5.18 Mr. Merryfield is only allowed to receive magazine(s) from one of the approved vendors. Concerning this:

a.      The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

b.      Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

c.      The vendors carry little if any magazine(s) for Mr. Merryfield to purchase.

4.      Policy 5.18 does not provide any guidelines or rules as to what would or would not make a magazine appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

a.      Policy 5.18 states that sexually explicit material is not allowed.

b.      Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

5.      Policy 5.18 allows for Mr. Merryfield to lose the magazine(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

6.      Policy 5.18 requires the book to have an industry standard rating before it can be approved. Concerning this:

a.      To Mr. Merryfield's knowledge there is no industry standard rating for magazine(s).

E.    **Painting(s) Censorship**

1.      The Defendant(s) media policy (Policy 5.18) defines painting(s) as media. Concerning this:

a. The policy does not define what a painting is.

2.      Per policy 5.18 Mr. Merryfield must have prior approval before receiving a painting in the mail.

3.      Per Policy 5.18 Mr. Merryfield is only allowed to receive painting(s) from one of the approved vendors. Concerning this:

a.      The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

b.      Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

c.      The vendors carry little if any painting(s) for Mr. Merryfield to purchase.

4.      Policy 5.18 does not provide any guidelines or rules as to what would or would not make a painting appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

a.      Policy 5.18 states that sexually explicit material is not allowed.

      **b.**     Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

    **5.**     Policy 5.18 allows for Mr. Merryfield to lose the painting(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

    **6.**     Policy 5.18 requires the painting to have an industry standard rating before it can be approved. Concerning this:

      **a.**     To Mr. Merryfield's knowledge there is no industry standard rating for painting(s).

**F.**    **Drawing(s) Censorship**

    **1.**     The Defendant(s) media policy (Policy 5.18) defines drawing(s) as media. Concerning this:

      **a.** The policy does not define what a drawing is.

    **2.**     Per policy 5.18 Mr. Merryfield must have prior approval before receiving a drawing in the mail.

    **3.**     Per Policy 5.18 Mr. Merryfield is only allowed to receive drawing(s) from one of the approved vendors. Concerning this:

      **a.**     The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

      **b.**     Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the

facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

      **c.**     The vendors carry little if any drawing(s) for Mr. Merryfield to purchase.

**4.**     Policy 5.18 does not provide any guidelines or rules as to what would or would not make a drawing appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

      **a.**     Policy 5.18 states that sexually explicit material is not allowed.

      **b.**     Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

**5.**     Policy 5.18 allows for Mr. Merryfield to lose the drawing(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

**6.**     Policy 5.18 requires the drawing to have an industry standard rating before it can be approved. Concerning this:

      **a.**     To Mr. Merryfield's knowledge there is no industry standard rating for drawing(s).

**G.**    **Writing(s) Censorship**

**1.**     The Defendant(s) media policy (Policy 5.18) defines writing(s) as media. Concerning this:

      **a.**     The policy does not define what a writing is.

**b.**     The basic definition of writing is an instrument. Anything which is written. Legible characters in pen or pencil. Handwriting, typewriting, or printing. 11 Am J2d B & N § 57. The expression of ideas by visible letters. *Ballentine's Law Dictionary 3rd Edition.*

**c.**     Without a set definition by the facility the plain normal definition means that every piece of correspondence Mr. Merryfield receives is media and subject to the rules for media. This would include personal, legal and official mail.

**d.**     The plain normal definition of writing means that the therapist assigned Mr. Merryfield gets to decide whether he should or should not communicate with another and whether he can or cannot even have the writing.

**2.**     Per policy 5.18 Mr. Merryfield must have prior approval before receiving a writing in the mail.

**3.**     Per Policy 5.18 Mr. Merryfield is only allowed to receive writing(s) from one of the approved vendors. Concerning this:

**a.**     The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

**b.**     Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

**c.**     The vendors carry little if any writing(s) for Mr. Merryfield to purchase.

**4.**     Policy 5.18 does not provide any guidelines or rules as to what would or would not make any writing appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

a.     Policy 5.18 states that sexually explicit material is not allowed.

**b.**     Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

**5.**     Policy 5.18 allows for Mr. Merryfield to lose the writing(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

**6.**     Policy 5.18 requires the writing to have an industry standard rating before it can be approved. Concerning this:

**a.**     To Mr. Merryfield's knowledge there is no industry standard rating for writing(s).

## H.     Picture(s) Censorship

**1.**     The Defendant(s) media policy (Policy 5.18) defines picture(s) as media. Concerning this:

**a.**     The policy does not define what a picture is.

**2.**     Per policy 5.18 Mr. Merryfield must have prior approval before receiving a picture in the mail.

**3.**     Per Policy 5.18 Mr. Merryfield is only allowed to receive picture(s) from one of the approved vendors. Concerning this:

**a.**     The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

**b.**     Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the

facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

    **c.**      The vendors carry little if any picture(s) for Mr. Merryfield to purchase.

**4.**      Policy 5.18 does not provide any guidelines or rules as to what would or would not make a picture appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

    a.      Policy 5.18 states that sexually explicit material is not allowed.

    **b.**      Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

**5.**      Policy 5.18 allows for Mr. Merryfield to lose the picture(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

**6.**      Policy 5.18 requires the picture to have an industry standard rating before it can be approved. Concerning this:

    **a.**      To Mr. Merryfield's knowledge there is no industry standard rating for picture(s).

**7.**      Mr. Merryfield received in the mail picture(s) from a company called Quick's. Concerning this:

    **a.**      The first set (21 Pictures) was received on the 30th day of December 2022, in the mail. Property Officer Xan Bowersox seized them

without letting Mr. Merryfield see them and without determining if they were appropriate sent them to the therapist Jason Jester.

      **b.**      Mr. Jester was leaving employment and gave the picture(s) to Pam Middleton.

      **c.**      Pam Middleton returned all but five pictures.

      **d.**      The second set (fourteen (14) Pictures) was received on the 9th day of January 2023. Property Officer Elizabeth Keller informed Mr. Merryfield that they could only be reviewed by the therapist. Thus, she sent them to Pam Middleton.

      **e.**      For the second set of photos Mr. Merryfield counted the pictures out and saw no nudity as he counted them.

      **f.**      On the 13th day of January 2023, Mr. Merryfield was served a rights restriction from Daphne Norez, stating that fourteen pictures were being denied as they contained nudity and she perceived the persons in the pictures were under age. The pictures came from the first and second set. Concerning this:

          **i.**      The restriction as carried out by Daphne Norez, a licensed psychologist.

          **ii.**      Since Mr. Merryfield's commitment Daphne Norez has never been his primary therapist.

          **iii.**      Daphne Norez does not meet with Mr. Merryfield, participate in any classes or groups he is in and to Mr. Merryfield's knowledge is not even aware of what his treatment is.

          **iv.**      Daphne Norez put in writing that after reviewing the pictures to ascertain their content (reading) that they contained nudity and in her perception minors.

          **v.**      Prior to Daphne reading the pictures Mr. Merryfield was never issued any form of Due Process or notice that his mail would be read.

      **g.**      Quick's states right on the order form that they comply with 18 U.S.C. 2256 and 2257, concerning no pictures of any one under the age of eighteen and no nudity will be shown as defined in the federal laws.

**h.**     On January 24, 2023, Mr. Merryfield had an informal hearing, via telephone, concerning the pictures. The person assigned to review the matter was Dr. Rebecca Farr, director State Security Program. Concerning this:

> **i.**     Mr. Merryfield was not allowed to see the pictures.

> **ii.**     Mr. Merryfield was not allowed to call witnesses.

> **iii.**     Mr. Merryfield was not allowed to have Daphne Norez present or ask her questions as to why she rendered her decision or why she believed the pictures had nudity.

> **iv.**     The hearing was so informal that it was not in person, Dr. Farr was somewhere outside of the program and spoke through a telephone. This denied Mr. Merryfield the ability to even identify Dr. Farr if he had to.

> **v.**     Leann Thomas, Grievance Officer, was present during the hearing.

**i.**     On January 30, 2023, Dr. Rebecca Farr, concerning the photos ordered that three be returned and eleven contain nudity and should not be returned.

**j.**     On January 30, 2023, Dr. Rebecca Farr stated that if Mr. Merryfield continues to receive pictures like this the facility could or would retaliate and deny his release or advancement towards release in the program.

## I.     Movie(s) Censorship

**1.**     The Defendant(s) media policy (Policy 5.18) defines movie(s) as media. Concerning this:

> **a.**     The policy does not define what a movie is.

**2.**     For purposes of this Petition and section, Mr. Merryfield defines movie as a feature length film with a story and does not mean a TV series or television film distributed on DVD or Blu-Ray, each of which will be discussed individually.

**3.**     Per policy 5.18 Mr. Merryfield must have prior approval before receiving a movie(s) in the mail.

**4.**     Per Policy 5.18 Mr. Merryfield is only allowed to receive movie(s) from one of the approved vendors. Concerning this:

      **a.**     The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

      **b.**     Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

      **c.**     The vendors carry little if any movie(s) for Mr. Merryfield to purchase.

**5.**     Policy 5.18 does not provide any guidelines or rules as to what would or would not make any movie appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

      a.     Policy 5.18 states that sexually explicit material is not allowed.

      **b.**     Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

**6.**     Policy 5.18 allows for Mr. Merryfield to lose the movie(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

7.      Policy 5.18 requires the movie(s) to have an industry standard rating before it can be approved. Concerning this:

    a.      To Mr. Merryfield's knowledge there are multiple industry standards for movie(s). (i.e. Canada, Europe, Motion Picture Association, to name a few).

    b.      Policy 5.18 does not define the term industry standard.

8.      The Motion Picture Association holds that any movie rated R and below will not contain any sexually explicit material.

**J.      Television Shows and Movies Censorship**

1.      The Defendant(s) media policy (Policy 5.18) defines movie(s) as media. Concerning this:

    a.      The policy does not define what a movie is.

2.      For purposes of this Petition and section, Mr. Merryfield defines televisions shows and movies as a series or movie that was solely on television and rated by the FCC and then distributed on DVD or Blu-Ray. For all intensive purposes under Policy 5.18 these are titled movie(s).

3.      Per policy 5.18 Mr. Merryfield must have prior approval before receiving a movie(s) in the mail.

4.      Per Policy 5.18 Mr. Merryfield is only allowed to receive movie(s) from one of the approved vendors. Concerning this:

    a.      The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

    b.      Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

    c.      The vendors carry little if any movie(s) for Mr. Merryfield to purchase.

**5.**     Policy 5.18 does not provide any guidelines or rules as to what would or would not make any television series or movie appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

    **a.**     Policy 5.18 states that sexually explicit material is not allowed.

    **b.**     Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2) masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

**6.**     Policy 5.18 allows for Mr. Merryfield to lose the movie(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

**7.**     Policy 5.18 requires the movie(s) to have an industry standard rating before it can be approved. Concerning this:

    **a.**     To Mr. Merryfield's knowledge there is only one rating system for this type of movie and that is that which is provided by the FCC. They are not rated by the Motion Picture Association.

    **b.**     Policy 5.18 does not define the term industry standard.

**8.**     The Defendant(s) block television shows that are shown on the cable television system in Mr. Merryfield's room. Concerning this:

    **a.**     The block completely ensures that Mr. Merryfield is not allowed to see any episode of *Yellowstone*. Society deems this show to not be sexually explicit and neither does the rating board for this medium. Concerning this:

        **i.**     Cristina Sanchez worked in the facility from March to about the end of May in the year 2022.

> **ii.** During this time she was the therapist for Mr. Merryfield.
>
> **iv.** During a group or class experience she related that when she treated sex offenders in the Kansas Department of Corrections one of the topics they would generally discuss was what occurred during that week's episode of *Yellowstone*.

**b.** The block does not bar Mr. Merryfield from seeing: *Law and Order SVU; Botched;* and *Naked and Afraid*. Concerning this:

> **i.** In these shows one can see a full female breast with only the areola covered.
>
> **ii.** In these shows one can see full buttocks uncovered with only the hole blurred out.
>
> **iii.** In these shows one can see and learn all about sexual offending of every type.
>
> **iv.** Society does not deem these shows sexually explicit and neither does the rating board for this medium.

**c.** When Mr. Merryfield has a job within the facility he is required to pay room and board, which pays for this cable television, but he is not provided no say in what channels or what is not blocked.

**d.** The Defendant(s) block shows on the Food Network channel. Society does not deem any show on this channel as sexually explicit and neither does the rating board for this medium.

**e.** The Defendant(s) do not provide notice or any other part of Due Process for each and every show that they block on cable television system.

**f.** On February 7, 2023, at 1800 hours (6:00 PM) the channel FX showed the movie titled "*The Rock*" with Nicholas Cage. The Defendant(s) blocked this from being watched by Mr. Merryfield.

**9.** The cover or case for a television series or film, when it comes on DVD or Blu-Ray, lists that there is no rating. This is the statement that it contains no rating by the Motion Picture Association, however, the Defendant(s) declare that this means it does not have a rating at all. The cover normally does not contain the FCC rating, one would have to get this from the internet.

**10.** On January 11, 2023, Pam Middleton denied Mr. Merryfield the ability to purchase, own, or possess the television series "*Station 19*" Season 1. Concerning this:

  **a.** The request was submitted on October 14, 2022 to Jason Jester.

  **b.** The reason Mrs. Middleton gave was: "Denied due to more sexual situations and strong innuendos are present including lesbian sex scenes, oral sex, masturbation, and heterosexual couples in similar situations."

  **c.** The FCC rated this as TV-14.

  **d.** The show was on broadcast television station ABC during primetime.

  **e.** The facility never blocked the show when it aired on TV.

  **f.** Pam Middleton is a licensed clinical social worker and not a psychologist, thus it cannot be said the denial was based on a treatment need.

  **g.** Pam Middleton has and continues to refuse to issue a rights restriction or any form of Due Process for the censorship and restriction of the item.

  **h.** Mr. Merryfield received the answer on or about January 24, 2023.

  **i.** On January 25, 2023, Mr. Merryfield submitted a request to the facility asking it to find that Pam Middleton erred in not issuing the rights restriction for this denial. The facility accepted and filed it on January 27, 2023.

  **j.** On or about January 30, 2023, Keri Applequist reviewed the request from Mr. Merryfield and found the TV Series needed to be restricted. Concerning this:

    **i.** Keri Applequist checked two boxes on the form, which read as follows:

      **a.** "The right identified has been denied for cause or limited for cause after review by the Clinical Director."

       **b.**     "The right identified has not been denied or restricted as medically or therapeutically contraindicated."

       **ii.**     Keri Applequist stated the reason as: "According to the program's search of the media…"

       **iii.**     In the body of the reason for denial Keri Applequist states it is contraindicative to treatment even though she checked the box stating it is not contraindicative to treatment.

**11.**     On January 13, 2023, Pam Middleton denied Mr. Merryfield the ability to purchase, own, or possess the television series "*Station 19*" Season 2. Concerning this:

       **a.**     The request was submitted on October 14, 2022 to Jason Jester.

       **b.**     The reason Mrs. Middleton gave was: "Denied due to more sexual situations and strong innuendos are present including lesbian sex scenes, oral, ~~sex~~ masturbation, and heterosexual couples in similar situations."

       **c.**     The FCC rated this as TV-14.

       **d.**     The show was on broadcast television station ABC during primetime.

       **e.**     The facility never blocked the show when it aired on TV;

       **f.**     Pam Middleton is a licensed clinical social worker and not a psychologist, thus it cannot be said the denial was based on a treatment need.

       **g.**     Pam Middleton has and continues to refuse to issue a rights restriction or any form of Due Process for the censorship and restriction of the item.

       **h.**     Mr. Merryfield received the answer on or about January 24, 2023.

       **i.**     On January 25, 2023, Mr. Merryfield submitted a request to the facility asking it to find that Pam Middleton erred in not issuing the rights restriction for this denial. The facility accepted and filed it on January 27, 2023.

**j.**      On or about January 30, 2023, Keri Applequist reviewed the request from Mr. Merryfield and found the TV Series needed to be restricted. Concerning this:

> **i.**      Keri Applequist checked two boxes on the form, which read as follows:
>
>> **a.**      "The right identified has been denied for cause or limited for cause after review by the Clinical Director."
>>
>> **b.**      "The right identified has not been denied or restricted as medically or therapeutically contraindicated."
>
> **ii.**      Keri Applequist stated the reason as: "According to the program's search of the media…"
>
> **iii.**      In the body of the reason for denial Keri Applequist states it is contraindicative to treatment even though she checked the box stating it is not contraindicative to treatment.

**12.**      On January 13, 2023, Pam Middleton denied Mr. Merryfield the ability to purchase, own, or possess the television series "*Station 19*" Season 3. Concerning this:

> **a.**      The request was submitted on October 14, 2022 to Jason Jester.
>
> **b.**      The reason Mrs. Middleton gave was: "Denied due to more sexual situations and strong innuendos are present including lesbian sex scenes, oral sex, masturbation, and heterosexual couples in similar situations."
>
> **c.**      The FCC rated this as TV-14.
>
> **d.**      The show was on broadcast television station ABC during primetime.
>
> **e.**      The facility never blocked the show when it aired on TV.
>
> **f.**      Pam Middleton is a licensed clinical social worker and not a psychologist, thus it cannot be said the denial was based on a treatment need.
>
> **g.**      Pam Middleton has and continues to refuse to issue a rights restriction or any form of Due Process for the censorship and restriction of the item.

**h.**     Mr. Merryfield received the answer on or about January 24, 2023.

**i.**     On January 25, 2023, Mr. Merryfield submitted a request to the facility asking it to find that Pam Middleton erred in not issuing the rights restriction for this denial. The facility accepted and filed it on January 27, 2023.

**j.**     On or about January 30, 2023, Keri Applequist reviewed the request from Mr. Merryfield and found the TV Series needed to be restricted. Concerning this:

    **i.**     Keri Applequist checked two boxes on the form, which read as follows:

        **a.**     "The right identified has been denied for cause or limited for cause after review by the Clinical Director."

        **b.**     "The right identified has not been denied or restricted as medically or therapeutically contraindicated."

    **ii.**     Keri Applequist stated the reason as: "According to the program's search of the media…"

    **iii.**     In the body of the reason for denial Keri Applequist states it is contraindicative to treatment even though she checked the box stating it is not contraindicative to treatment.

**13.**     On August 2, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the television series titled "Chicago Med." Concerning this:

**a.**     Mr. Merryfield presented the request to his therapist Kelsey Fleet.

**b.**     No approval or denial on the request has been provided to Mr. Merryfield.

**c.**     No Due Process of any form has been provided. Mr. Merryfield still waits for some form of Due Process.

**14.**     On August 2, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the television series titled "Chicago PD." Concerning this:

**a.**     Mr. Merryfield presented the request to his therapist Kelsey Fleet.

     **b.**      No approval or denial on the request has been provided to Mr. Merryfield.

     **c.**      No Due Process of any form has been provided. Mr. Merryfield still waits for some form of Due Process.

**15.**      On March 14, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the television series titled "Defiance." Concerning this:

     **a.**      Mr. Merryfield presented the request to his therapist Kelsey Fleet.

     **b.**      On August 2, 2021, Kelsey Fleet denied the television series and provided no reason why.

     **c.**      Kelsey Fleet never issued a rights restriction or any form of Due Process.

**16.**      On March 14, 2021, Mr. Merryfield submitted a CPR-518 Media Request for the television series titled "Good Trouble." Concerning this:

     **a.**      Mr. Merryfield presented the request to his therapist Kelsey Fleet.

     **b.**      On August 10, 2021, Kelsey Fleet denied the television series and stated it was due to partial nudity.

     **c.**      Kelsey Fleet never issued a rights restriction or any form of Due Process.

     **d.**      This television series was shown on the family friendly channel ABC Family, which then changed to Freeform TV.

**K.**    **Video Games**

     **1.**      The Defendant(s) media policy (Policy 5.18) defines video games as media. Concerning this:

     **a.**      The facility has a complete block or ban on all video game systems other than the Original XBOX. The Playstation One, Playstation 2, XBOX 360, XBOX ONE, Playstation 4, Personal Computer, and any newer system to come out is banned in the secure confinement center in Larned. They are not banned in the secure confinement center for the program in Osawatomie, Parsons, and Meyer Building located in Larned Kansas.

  **b.**  All video games rated M or higher are banned no matter what.

  **c.**  All computer (PC) games are banned no matter what.

**2.**  Per policy 5.18 Mr. Merryfield must have prior approval before receiving a video game in the mail.

**3.**  Per Policy 5.18 Mr. Merryfield is only allowed to receive video game(s) from one of the approved vendors. Concerning this:

  **a.**  The current approved vendors are: Dick Blick, Fire Mountain Gems, Haband, Herrschner's, JJ Games, Keefe, Model Empire, United States Postal Service, Walgreens, Wal-Mart, and Walkenhorst's.

  **b.**  Even though Wal-Mart is a vendor this does not mean that all items sold on Wal-Mart.com can be received by Mr. Merryfield. If the item is listed at walmart.com but is shipped by a place other than the Wal-Mart warehouse Mr. Merryfield cannot have the item. This is based on the facility's view that it is a third party vendor. In other words if Wal-Mart contracts another entity to fulfill the order Mr. Merryfield will not be allowed to have the item.

  **c.**  The vendors carry little if any video game(s) for Mr. Merryfield to purchase.

**5.**  Policy 5.18 does not provide any guidelines or rules as to what would or would not make any video game appropriate for Mr. Merryfield. Instead it leaves it to the discretion of the therapist who is assigned to Mr. Merryfield at the time. Though it is admitted:

  **a.**  Policy 5.18 states that sexually explicit material is not allowed.

  **b.**  Sexually explicit is defined by the Defendant(s) as: "The purpose of the material is for sexual arousal or gratification; or contains nudity, which shall be defined as the depiction or display of any state of undress in which the (1) human genitals, (2) pubic region, (3) buttock, or (4) female breast at a point below the top of the areola, are less than completely and opaquely covered; or Containing any display, actual or simulated, or description of any of the following: (1) sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender, (2)

masturbation, (3) bestiality, (4) sadomasochistic abuse, or (5) the exploitation of any person under the age of 18 years."

**6.** Policy 5.18 allows for Mr. Merryfield to lose the video game(s) for which he received approval for prior to at the whim of any new therapist assigned to him.

**7.** Policy 5.18 requires the video game(s) to have an industry standard rating before it can be approved. Concerning this:

**a.** To Mr. Merryfield's knowledge there is only one rating system for this type of movie and that is that which is provided by the ESRB.

**b.** Policy 5.18 does not define the term industry standard.

**c.** On December 3, 1993 Senators Joseph Lieberman and Herb Kohl led a joint congressional hearing on the then growing concerns over the level of violence in video games. The game *Mortal Kombat* was at the forefront of this discussion. Congress heard from experts at Nintendo and Sega in congressional hearings. They were seeking information as to how minors were being protected from inappropriate content. Out of these hearings the Video Game Rating Act of 1994 was created.

**d.** The Video Game Rating Act stated it would cease to exist if the video game industry created an industry wide standard for video game ratings. The video game industry responded by creating the Entertainment Services Rating Board (ESRB). The Video Game Rating Act then died in committee.

**e.** The steps in the process of creating a rating for the ESRB are:

**i.** In the final development stages of the video game it is submitted to the ESRB for review. This is done by a publisher answering a detailed questionnaire issued by the ESRB and must include a DVD of all the questionable or objectionable material. The DVD must include the most extreme instances of material that falls under each of the ESRB's rating content descriptors.

**ii.** Next it goes to a panel of trained ESRB raters, three in total. Each rater will independently assign a rating and

series of content descriptors to the game, and will then converse with the other raters to reach a consensus as to the final rating and content descriptors to be recommended for the game.

      **iii.** The publisher now has a choice to: (1) Accept the rating; (2) Change the content and resubmit; or (3) Appeal the rating decision. If appealed the appeals board is made up of publishers, retailers, and other professionals.

      **iv.** Once the rating is final the ESRB posts it on their website thirty days after the decision on the game is made. The ESRB also imposes restrictions on advertising and publications for games that utilize its rating system.

    **f.** The ESRB ratings are comparable to the ratings issued by the Motion Picture Association as follows:

      **i.** "E" ("Everyone") is the equivalent of a "G" rating.

      **ii.** "E10+" ("Everyone older than ten") is analogous to "PG."

      **iii.** "T" ("Teen") corresponds to a "PG13."

      **iv.** "M" ("Mature") equates to an "R" rating.

      **v.** For extreme cases, the ESRB has an "EC" rating for games appropriate for "Early Childhood" and "AO" for games suitable for "Adults Only."

**8.** The Defendant(s) blanket ban all games rated by the ESRB that contain certain words in the descriptor box, for example suggestive themes, excessive blood, etc.

**9.** The facility currently has banned all forms or versions of *Donkey Kong* for the reason that it is their perception the monkey is under age. This is a game Mr. Merryfield grew up playing and never played a part in his offending.

**10.** Mr. Merryfield requested permission to purchase the video game titled *Terraria*, rated T for teen by the ESRB. Concerning this:

    **a.** On or about September of 2021 Mr. Merryfield submitted the media request to Kelsey Fleet. At the time Mrs. Fleet was the therapist assigned to Mr. Merryfield.

31

b.      Around December of 2021 Mrs. Fleet was leaving and Mr. Merryfield was reassigned to Jason Jester. As Mrs. Fleet did not answer the request Mr. Merryfield submitted the request to Mr. Jester.

c.      At the end of December Mr. Merryfield was moved to a different unit, which caused him to be reassigned to a therapist named Krista Casmaer. Mr. Merryfield then submitted the request to Mrs. Casmaer on or about January 2022, as Mr. Jester did not answer the request.

d.      At the end of March 2022, Mr. Merryfield was reassigned to Cristina Sanchez as Mrs. Casmaer left employment with the facility. Mr. Merryfield presented the request to Mrs. Sanchez in or about April of 2022, as Mrs. Casmaer did not answer the request.

e.      At the end of June 2022, Mr. Merryfield was reassigned to Jason Jester as Mrs. Sanchez left employment with the facility.  On or about July 2022 Mr. Merryfield presented the request to Mr. Jester, as Mrs. Sanchez did not answer the request.

f.      At the beginning of January 2023 Mr. Merryfield was reassigned to Pam Middleton as Mr. Jester left employment with the facility. On January 6, 2023, Mr. Merryfield presented the request to Mrs. Middleton. Concerning this:

i.      Pam Middleton is licensed as a Clinical Social Worker;

ii.      On January 10, 2023, Mrs. Middleton denied the request based solely on the fact the rating descriptor box stated suggestive themes; and

iii.      Mrs. Middleton has and continues to refuse to issue a rights restriction or any form of Due Process for the censorship and restriction of the item.

## L.      Blanket Bans

1.      The facility does not allow for any video game rated M under any circumstance.

2.      The facility does not allow for any video game that contains the words "suggestive themes," in the rating descriptor box, under any circumstance.

3. The facility does not allow Mr. Merryfield to have any form of picture or other representation of a child. Concerning this:

    a. The facility provides pictures of kids three times a day on the milk cartons he is provided.

    b. In reintegration the children only have to be marked out with a pen or marker in any media.

    c. In secure confinement the individual must remove the entire page.

    d. This includes any representation (silhouette, stick figure, etc.) that the facility could perceive to be a child.

    e. This includes pictures of Mr. Merryfield that were taken just prior to his commitment to the facility as he was under the age of eighteen.

    f. This includes pictures of family members of Mr. Merryfield.

    g. When Mr. Merryfield receives Little Debbie® snack cakes he has to remove the picture of Little Debbie.

4. The facility does not allow any media that shows butt cheek. Concerning this:

    a. It does not matter if the material is intended for sexual purposes or if it is just incidental, i.e. a movie where one steps out a bathtub and a sliver of butt cheek is shown for a quick second.

5. The facility does not allow Mr. Merryfield to own, possess, or use a personal computer or laptop computer. Concerning this:

    a. The Kansas Department on Aging and Disability Services operates four secure confinement facilities under the KSVPA. The one at Larned, considered the base program, and the facility(ies) at Osawatomie, Parsons, and Meyer Building located in Larned Kansas.

    b. Those residing in Osawatomie, Parsons, and Meyer building are allowed to purchase own and possess a personal computer or laptop.

    c. A computer is a valuable rehabilitation tool in that it would allow Mr. Merryfield to learn the modern usage used in society. It also would help him receive a college education.

**6.** The facility outright bans any and all telephone books. In doing this they do not define the term "telephone books," and in so doing even restrict:

    **a.** Legal directories necessary for accessing the Court under the First Amendment of the United States Constitution.

    **b.** Do not provide attorney look up service in the law library to remedy the situation.

**7.** The facility does not allow for any local newspapers. Concerning this:

    **a.** They do not define what a "local newspaper" is.

    **b.** They do not define what is meant by the term local.

**8.** The facility bans any and all devices that have a LAN or telephone port. Concerning this:

    **a.** In today's technology age, most if not all electronics (Televisions, Tablets, Blu-Ray Player, Home Theater Receiver, etc.) contain this type of port.

    **b.** There are least restrictive alternatives to an outright ban. They can glue a plug in the port and place a tamper resistant sticker over the plug.

    **c.** Mr. Merryfield's room contains no plug in where this port could be utilized, thus negating the need for such a restriction or the need to plug the port and void the warranty.

**9.** The facility does not allow Mr. Merryfield to own, possess, or use a personal cell phone. Concerning this:

    **a.** The Kansas Department on Aging and Disability Services operates four secure confinement facilities under the KSVPA. The one at Larned, considered the base program, and the facility(ies) at Osawatomie, Parsons, and Meyer Building located in Larned Kansas.

    **b.** Those residing in Osawatomie, Parsons, and Meyer building are allowed to purchase own and possess a personal cell phone.

    **c.** A cell phone would only enable Mr. Merryfield to call numbers that are toll-free or answered by an automated system. For these are the only numbers that he cannot call from the telephones provided in the dayhall by the facility.

    **d.**     The only purpose seen in this rule is to deny Mr. Merryfield the ability to call toll-free numbers and phones that are answered by an automated system. In addition so that the Defendant(s) may make a profit off of the telephone calls Mr. Merryfield makes.

    **10.**    The facility completely bans any and all episodes of the television series *Yellowstone*.

**M.**    **Reading Mail**

    **1.**    To read is to ascertain the contents of a writing, a document, or printed matter from the words and signs thereof. *Ballentine's Law Dictionary,* 3rd Edition.

    **2.**    In order to censor or determine if a piece of incoming mail is appropriate or inappropriate the reviewing person must read said mail.

    **3.**    K.S.A. 59-29a22(b)(15)(B) grants Mr. Merryfield the liberty interest to not have his mail read by any staff or other person working in the Kansas Sexual Predator Treatment Program. The only exception is if the facility first complies with K.S.A. 59-29a22(c) and provides Due Process.

    **4.**    The facility has never complied with K.S.A. 59-29a22(c) nor provided any form of Due Process prior to the incidents of censorship, carried out by reading his mail, that are listed in this Petition.

    **5.**    Policy 8.3, Resident Mail, states that no member of the facility may read Mr. Merryfield's incoming or outgoing mail. It does allow for it to occur if the facility first complies with K.S.A. 59-29a22(c).

    **6.**    K.S.A. 59-29a22(b)(15)(B) and Policy 8.3 do not define the term "read."

    **7.**    Policy 8.6, Denial or Restriction of a Resident Right, sets forth the procedure required in K.S.A. 59-29a22(c). Concerning this:

        **a.**     The policy dictates that only a licensed psychologist assigned to Mr. Merryfield can enact a restriction based on a therapeutic need; and

        **b.**     if the restriction is by any staff member that is not a therapist the restriction is deemed for cause and not as a therapeutic restriction.

**8.**     When media[1] comes into the facility it is read in the following manner:

    **a.**     The property officers view the media and ascertain what it is and if it is appropriate or not. If questionable they withhold the mail and send it to the therapist.

    **b.**     If it is a magazine, catalog, newspaper, printed matter, or picture it is automatically deemed questionable and sent to the therapist.

    **c.**     When the therapist receives the mail they inspect it (read it) to ascertain whether Mr. Merryfield should have it.

**9.**     On January 6, 2021, Elizabeth Keller, read two pieces of mail that came in from Dr. Leonard's  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**10.**     On January 20, 2021, Linda Kidd, read four pieces of mail that came in from Dr. Leonard's, Bud K, Golf Digest and Havian  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**11.**     On January 26, 2021, Elizabeth Keller, read two pieces of mail that came in from KS Annual Fund Drive and Healthy Living  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**12.**     On February 16, 2021, Elizabeth Keller, read seven pieces of mail that came in from HD Products and Prison Legal News  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**13.**     On March 12, 2021, Elizabeth Keller, read two pieces of mail that came in from Dr. Leonard's and Carol Wright  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**14.**     On March 25, 2021, Elizabeth Keller, read two pieces of mail that came in from Dr. Leonard's and Prison Legal News and deemed them questionable and sent them to Mr. Merryfield's therapist.

**15.**     On March 20, 2021, Elizabeth Keller, read one piece of mail that came in from a Veterans Organization and deemed them questionable and sent them to Mr. Merryfield's therapist.

---

[1] Media is defined by the facility as any book, magazine, drawing, painting, writing, picture, movie, video game, item, device, or any similar object containing a visual, verbal, or auditory depiction, or theme.

**16.**     On April 13, 2021, Kristina Rose, read two pieces of mail that came in from Dr. Leonard's and Carol Wright  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**17.**     On April 21, 2021, Kristina Rose, read one piece of mail that came in from Dr. Leonard's and deemed them questionable and sent them to Mr. Merryfield's therapist.

**18.**     On May 11, 2021, Elizabeth Keller, read one piece of mail that came in from Golf Digest and deemed them questionable and sent them to Mr. Merryfield's therapist.

**19.**     On May 17, 2021, Elizabeth Keller, read five pieces of mail that came in from a Non-Profit Organization and four Manila Envelopes  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**20.**     On May 18, 2021, Elizabeth Keller, read one piece of mail that came in from unknown (1 Manila envelope)  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**21.**     On May 18, 2021, Elizabeth Keller, read three pieces of mail that came in from Dr. Leonard's, Carol Wright and Prison Legal News  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**22.**     On May 19, 2021, Elizabeth Keller, read one piece of mail that came in from FIYA Girls  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**23.**     On June 15, 2021, Elizabeth Keller, read one piece of mail that came in from Golf Digest  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**24.**     On June 17, 2021, Elizabeth Keller, read one piece of mail that came in from Dr. Leonard's  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**25.**     On November 16, 2021, Kristina Rose, read two pieces of mail that came in from unknown (5 Envelopes)  and deemed them questionable and sent them to Mr. Merryfield's therapist.

**26.**     On December 27, 2021, Elizabeth Keller, read two pieces of mail that came in from Self-Addressed Stamped Envelope and Pelnar and deemed them questionable and sent them to the assistant clinical program director, Keri Applequist.

27.      On January 10, 2022, Kristina Rose, read two-hundred and forty-eight pieces of mail (Pictures) that came and deemed them questionable and sent them to Mr. Merryfield's therapist.

28.      On October 21, 2022, Elizabeth Keller, read one piece of mail that came in from Disabled American Veterans  and deemed them questionable and sent them to Mr. Merryfield's therapist.

29.      On October 28, 2022, Xan Bowersox, read one piece of mail that came in from Prison Legal News  and deemed them questionable and sent them to Mr. Merryfield's therapist.

30.      On December 30, 2022, Xan Bowersox, read twenty-one pieces of mail (Pictures) that came in and deemed them questionable and sent them to Mr. Merryfield's therapist.

31.      On January 4, 2023, Xan Bowersox, read one piece of mail that came in from Prison Legal News and deemed them questionable and sent them to Mr. Merryfield's therapist.

32.      On January 9, 2023, Elizabeth Keller, read nine pieces of mail (Pictures) that came in and deemed them questionable and sent them to Mr. Merryfield's therapist.

32.      On January 17, 2023, Xan Bowersox, read one piece of mail that came in from ChristianBook.com and deemed them questionable and sent them to Mr. Merryfield's therapist.

33.      On January 25, 2023, Elizabeth Keller, read two pieces of mail that came in from ChristianBook.com and deemed them questionable and sent them to Mr. Merryfield's therapist.

34.      On February 7, 2023, Xan Bowersox, informed Mr. Merryfield that she had to ascertain, by reading, if the pictures he received in the mail, were appropriate.

35.      There are daily instances of the mail being read and sent to a therapist. The incidents listed in Paragraphs nine to thirty-three (9-33) herein are the ones for which documented proof of the occurrence was given to Mr. Merryfield.

36.      Policy 8.3 dictates that the property staff are to review all incoming mail, publications included, and discuss what is questionable with Mr. Merryfield present and if necessary fill out certain forms, before sending it to the therapist.

When Mr. Merryfield grieved the fact this was not being followed, he was basically informed it was too inconvenient for staff to follow the policy.

37.     Concerning the items sent to the therapist in Paragraph twenty-nine to thirty-three (29-33) they were then read by Pam Middleton, therapist for Mr. Merryfield. Concerning this:

    **a.**     Pam Middleton is a licensed Social Worker and not a psychologist.

    **b.**     Concerning Paragraph 30 and 32 Mr. Merryfield was ultimately denied fourteen pictures in total. Concerning this:

        **i.**     The restriction as carried out by Daphne Norez, a licensed psychologist.

        **ii.**     Since Mr. Merryfield's commitment Daphne Norez has never been his primary therapist.

        **iii.**     Daphne Norez does not meet with Mr. Merryfield, participate in any classes or groups he is in and to Mr. Merryfield's knowledge is not even aware of what his treatment is.

        **iv.**     Daphne Norez put in writing that after reviewing the pictures to ascertain their content (reading) that they contained nudity and in her perception minors.

        **v.**     Prior to Daphne reading the pictures Mr. Merryfield was never issued any form of Due Process or notice that his mail would be read.

38.     Concerning Paragraphs nine to twenty-eight herein, the mail was then read by the primary therapist assigned to Mr. Merryfield. Concerning this:

    **a.**     The therapists were Stacie Lubbers, Jason Jester, Kelsey Fleet, Christina Sanchez, Krista Casmaer, and Shawn Dixon.

    **b.**     These therapists no longer work in the facility or have taken jobs in parts of the program which are outside of the secure confinement environment.

39.     In the facility it does not matter what therapist Mr. Merryfield would be assigned to, they would all read his mail to ascertain his content including Sharon Surface, and Seth Osborne. Concerning this:

    **a.**     They all have a duty to enforce and uphold the laws and choose to not do so. This is shown through their actions.

    **b.**      No therapist has ever raised or argued that they should not be reading mail.

**N.**    **Mr. Merryfield's Adult Criminal Counterparts**

    **1.**      Mr. Merryfield's adult criminal counterparts have the statutory right to have any drawing, painting, writing, picture, item or device, that is not sexually explicit. K.A.R. 44-12-313.

    **2.**      For Mr. Merryfield's adult criminal counterparts the statute defines sexually explicit as:

    **a.**      The material shall be considered sexually explicit if the purpose of the material is sexual arousal or gratification ***AND*** the material meets either of the following conditions: Contains nudity, which shall be defined as the depiction or display of any state of undress in which the human genitals, pubic region, buttock, or female breast at a point below the top of the areola is less than completely and opaquely covered; or (2) Contains any display, actual or simulated, or description of any of the following: (A) Sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender; (B) masturbation; (C) bestiality; or (D) sadomasochistic abuse.

    **3.**      For Mr. Merryfield's adult criminal counterparts, if the facility deems the material sexually explicit the facility is statutorily required to advise the publisher or sender and provide them a chance to have the matter reviewed.

**O.**    **Mr. Merryfield's Juvenile Criminal Counterparts**

    **1.**      Mr. Merryfield's juvenile criminal counterparts have the statutory right to have any drawing, painting, writing, picture, item or device, that is not sexually explicit. K.A.R. 123-12-313.

    **2.**      For Mr. Merryfield's juvenile criminal counterparts the statute defines sexually explicit as:

    **a.**      The material shall be considered sexually explicit if the purpose of the material is sexual arousal or gratification ***AND*** the material meets either of the following conditions: Contains nudity, which shall be defined as the depiction or display of any state of undress in which the

human genitals, pubic region, buttock, or female breast at a point below the top of the areola is less than completely and opaquely covered; or (2) Contains any display, actual or simulated, or description of any of the following: (A) Sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender; (B) masturbation; (C) bestiality; or (D) sadomasochistic abuse.

3.      For Mr. Merryfield's juvenile criminal counterparts, if the facility deems the material sexually explicit the facility is statutorily required to advise the publisher or sender and provide them a chance to have the matter reviewed.

**P.      Mr. Merryfield's Federal Criminal Counterparts**

1.      Mr. Merryfield's criminal counterparts housed under Federal custody for a criminal violation have the right to have any media that is not nude or sexually explicit. 28 CFR 540.72.

2.      As used in 28 CFR 540.72 the definitions are as follows:

a.      Commercially published information or material means any book, booklet, pamphlet, magazine, periodical, newsletter, photograph or other pictorial depiction, or similar document, including stationery and greeting cards, published by any individual, organization, company, or corporation which is distributed or made available through any means or media for a commercial purpose. This definition includes any portion extracted, photocopied, or clipped from such items.

b.      Nudity means a pictorial depiction where genitalia or female breasts are exposed.

c.      Features means the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

d.      Sexually explicit means a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation.

3.      For Mr. Merryfield's federal criminal counterparts, if the facility deems the material sexually explicit the facility is statutorily required to advise the publisher or sender and provide them a chance to have the matter reviewed.

**Q.    Limited Vendors**

1.      On or about the year 2011, the facility restricted who Mr. Merryfield could receive media from. Prior to this he could receive it from any company. The reasons for this were:

a.      Individuals were repackaging items with contraband.

b.      There was no set staff in the mail room handing out packages, so consistency and proper handling to ensure this did not occur was not available.

c.      There was no tomography machine.

2.      The rule on limited vendors creates a state enabled monopoly for:

a.      Mr. Merryfield has a statutory right to spend his money where he wants.

b.      Mr. Merryfield is forced to only shop at the companies that the officers of the State want him to use based on their preferences.

3.      Today the vendor limit is unnecessary for the following reasons:

a.      All incoming mail and packages are held for one full day before giving them to the individuals confined. Allowing for time to inspect and determine if it was tampered with or where it came from.

b.      They have a property department with five staff that are constant and enforce the rules consistently.

c.      Law Enforcement officers scan all incoming packages with a Tomography (X-Ray) machine and do a visual inspection before allowing them to enter the building.

d.      They have enhanced the criminal statutes in Kansas to provide severe penalties for the introduction of contraband.

4.      Today, the Defendant(s) apply the vendor limit in an overbearing manner that denies basic items:

a.      When it was first enacted one could order any item from Walmart.com no matter who Wal-Mart had deliver the product. Today

they require that Wal-Mart personally ship the item and not use a third party or the item is not allowed. This causes:

      **i.**      Most of the items to not be available.

      **ii.**      Mr. Merryfield to have to pay more for the items then if he could just order the cheaper one at Walmart.com.

      **iii.**      Most if not all media to be unavailable.

**5.**      The facility denial of internet blocks the use of the vendors. Concerning this:

      **a.**      For security reasons (hacking, unlawful use of debit or credit information, etc.) some of the vendors are not available. For example, Walmart.com no longer accepts telephone orders, so if Mr. Merryfield does not have someone on the outside to place his order at their website he cannot order from them.

**R.**      **Individual Participation**

**1.**      Sharon Surface, a Licensed Clinical Social Worker, not a Psychologist, enforces the media policy. In doing this she:

      **a.**      Issues therapeutic approval or denial for media even though she is not a licensed psychologist.

      **b.**      Enforces the policy rather than question its properness.

**2.**      Pam Middleton, a Licensed Clinical Social Worker, not a Psychologist, enforces the media policy. In doing this she:

      **a.**      Issues therapeutic approval or denial for media even though she is not a licensed psychologist.

      **b.**      Enforces the policy rather than question its properness.

      **c.**      Upon denying media refuses to provide the statutorily mandated Due Process in violation of Mr. Merryfield's rights.

**3.**      Daphne Norez, a Psychologist, enforces the media policy. In doing this she:

      **a.**      Issues therapeutic approval or denial for media, for Mr. Merryfield, even though she:

      **i.**      Does not lead or attend any therapy session with Mr. Merryfield.

> **ii.** Has never individually met with Mr. Merryfield to get to know him.
>
> **iii.** To Mr. Merryfield's knowledge has never read his Relapse Prevention Plan or other therapy documents to know what would or would not be appropriate for him.
>
> **b.** Enforces the policy rather than question its properness.

**4.** On February 1, 2023, during group Pam Middleton stated she does not review any media requested. When she receives a media request she hands it to Linda Kidd. Then Linda Kidd puts a sticky note on it as to whether it should be approved or denied and why. Then Pam transfers that to the request form and signs it approved or denied.

**R.** **Kansas Sexually Violent Predator Act (KSVPA)**

**1.** Mr. Merryfield is civilly committed under the KSVPA, K.S.A. 59-29a01 et seq.

**2.** The KSVPA does not require censorship or restriction of media unless it is sexually explicit.

**3.** The statute (K.S.A. 59-29a22(b)(15)(C)) does not define the term sexually explicit.

**4.** All other civil commitments (two total) in Kansas are not to have lost any property right or legal capacity thereof by being civilly committed.

**5.** All other civil commitments (two total) in Kansas are not to have lost any civil right they otherwise would have as a resident or citizen.

**6.** The Court of Appeals clearly established that when a right under the KSVPA is denied and no Due Process is provided, shocking and intolerable conduct of the most egregious has occurred on the part of the staff in the facility.

**7.** The Court of Appeals clearly established that the rights of Mr. Merryfield's criminal counterparts sets a floor for the rights for which he must be provided.

**S.** **The Defendant(s) Treatment Environment**

**1.** As a part of treatment Mr. Merryfield was assigned to take a class titled "Rock Music What's Life Got to Do With It."

**2.**      As a part of treatment Mr. Merryfield was assigned to take a class titled "Motivational Interviewing Through Rock Music."

**3.**      As a part of treatment Mr. Merryfield was assigned to take a class titled "Rock Music Interpretations." Concerning this:

    **a.**      Lesson 1 teaches that music does not cause one to act in any specific manner it is only words. It is what the person personally chooses to do based on music heard that may make it bad or good.

    **b.**      Lesson five contains images of child content.

    **c.**      Lesson five contains a cartoon image of a child.

    **d.**      The program allows for Mr. Merryfield to own and possess this material without alteration (i.e. tearing the page out, or marking out the content).

**4.**      As a part of treatment Mr. Merryfield was assigned to take a class titled "Communications." Concerning this:

    **a.**      The Resident Guide for the class contains child-oriented content.

    **b.**      The program allows for Mr. Merryfield to own and possess this material without alteration (i.e. tearing the page out, or marking out the content).

**5.**      As a part of treatment Mr. Merryfield was assigned to take a class titled "Ethics." Concerning this:

    **a.**      The resident guide has a picture of a child, or what appears to be a child.

    **b.**      The program allows for Mr. Merryfield to own and possess this material without alteration (i.e. tearing the page out, or marking out the content).

**T.**      **Gabriel Rop and Laura Howard**

**1.**      Gabriel Rop is the Administrative Program Director for the Kansas Sexually Violent Predator Treatment Program. Concerning this:

    **a.** He is the top administrator responsible for enforcing, drafting and correcting policies within the program.

    **b.**      Mr. Merryfield spoke with Mr. Rop concerning the censorship policy and no change was made after the discussion.

     **c.**     Mr. Merryfield asked Mr. Rop, in writing, to enforce Policy 8.6 and have his property returned to him within five working days. This did not occur and Mr. Rop failed to enforce the policy.

     **2.**     Laura Howard is the Secretary for the Kansas Department on Aging and Disability Services. Concerning this:

     **a.**     The Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq., declares her to be the custodian of Mr. Merryfield.

     **b.**     The Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq., declares her to be responsible to create and draft all policies in the Kansas Sexual Predator Treatment Program.

     **c.**     The Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq., declares her to be responsible for ensuring that all of Mr. Merryfield's rights (State, Federal, and Constitutional) are upheld and enforced while he is confined under the Kansas Sexually Violent Predator Act.

     **d.**     The Kansas Court of Appeals clearly established that Mrs. Howard is the ultimate party responsible for any abuse of rights that Mr. Merryfield suffers.

     **e.**     Laura Howard sits in a town about a four hour drive away from the facility and turns a blidn eye to the abuses alleged in this Petition.

     **f.**     Laura Howard has put in place no method or mechanism whereby Mr. Merryfield can bring a complaint for a violation of his rights directly to her.

     **g.**     Previous Secretaries for KDADS allowed Mr. Merryfield to bring a complaint to them and be heard.

     **h.**     Mr. Merryfield's adult, juvenile, and federal criminal counterparts have the right and ability to have the Secretary of Corrections review and hear their complaints of abuse. Keeping in mind there are thousands of these and in Mr. Merryfield's case there is only hundreds makes this more egregious.

### D.     PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1)     Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your confinement? ■ Yes ☐ No. If your answer is "Yes," describe each lawsuit:

I have sought many state court actions concerning my conditions of confinement. Most all of them were appealed and can be found on Lexis Nexis under my name. Most if not all were dismissed for failure to state a claim or another reason. I do not have a list of all of them and hope this will suffice the Court's reasoning for this question.

2)     I have previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part C ☐ Yes  ☐ No. If your answer is "Yes," briefly describe how relief was sought and the results. If your answer is "No," briefly explain why administrative relief was not sought.

In answering this question it is both Yes and No. As shown in the facts of this Complaint I did seek administrative relief. Then as the facility refuses to answer said relief I am statutorily barred from moving forward with any relief.

I further state that I am not required to exhaust administrative remedies, for the reasons that:

A.     I am asking for review of questions of law, more specifically of the United States Constitution, in which an administrative agency has no authority to review, answer or decide.

B.     I come forward with a Constitutional challenge to the administrative remedy and seek systemic changes to said system.

C.     I have shown in the facts section that the administrative remedy is not empowered to carry out or enforce their decisions and there is no remedy whereby I could enforce that remedy if it is granted, thereby making it an invalid remedy.

### E.    REQUEST FOR RELIEF

1)    I, Dustin J. Merryfield, come forward and request that this Court after review of this Complaint find and issue the following relief:

    **i.**    Declare that Policy 5.18 is vague and ambiguous in that it does not define the term Music CD, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

    **ii.**    Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to music.

    **iii.**    Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning Music CD's.

    **iv.**    Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a Music CD inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

    **v.**    Declare that once a Music CD is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

    **vi.**    Declare that a blanket ban on all Music CD's not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

    **vii.**    Declare that there is no industry standard rating for Music CD's and thus the Defendant(s) have enacted a policy whereby all Music CD's are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

    **viii.**    Declare that Kelsey Fleet, by not answering the request for the Music CD by artist DMX, titled "Best of DMX," has violated Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

    **ix.**    Declare that Kelsey Fleet, by denying the Music CD by Halsey titled "Manic," and not providing Due Process violated Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

    **x.**    Declare that Kelsey Fleet, by not answering the request for the Music CD by artist Skillet, titled "Vital Signs," has violated Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xi.** Declare that Kelsey Fleet, by denying the Music CD by Lil Troy titled "Sittin' Fat Down South," and not providing Due Process violated Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xii.** Declare that by not answering a media request for a Music CD it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xiii.** Declare that not providing Due Process to Mr. Merryfield when a Music CD is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

**xiv.** Declare that by not answering a media request for a Music CD within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xv.** Declare that Policy 5.18 is vague and ambiguous in that it does not define the term book, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**xvi.** Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to books

**xvii.** Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning books.

**xviii.** Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a book inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**xix.** Declare that once a book is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xx.** Declare that a blanket ban on all books not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxi.** Declare that there is no industry standard rating for books and thus the Defendant(s) have enacted a policy whereby all books are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxii.** Declare that by not answering a media request for a book it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxiii.**       Declare that not providing Due Process to Mr. Merryfield when a book is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

**xxiv.**       Declare that by not answering a media request for a book within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxv.**       Declare that Policy 5.18 is vague and ambiguous in that it does not define the term magazine, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**xxvi.**       Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to magazines.

**xxvii.**       Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning magazines.

**xxviii.**       Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a magazine inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**xxix.**       Declare that once a magazine is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxx.**       Declare that a blanket ban on all magazines not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxxi.**       Declare that there is no industry standard rating for magazines and thus the Defendant(s) have enacted a policy whereby all magazines are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxxii.**       Declare that by not answering a media request for a magazine it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxxiii.**       Declare that not providing Due Process to Mr. Merryfield when a magazine is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

**xxxiv.**       Declare that by not answering a media request for a magazine within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xxxv.**      Declare that Policy 5.18 is vague and ambiguous in that it does not define the term painting, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**xxxvi.**      Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to paintings.

**xxxvii.**      Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning paintings.

**xxxviii.**      Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a painting inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**xxxix.**      Declare that once a painting is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xl.**      Declare that a blanket ban on all paintings not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xli.**      Declare that there is no industry standard rating for paintings and thus the Defendant(s) have enacted a policy whereby all paintings are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xlii.**      Declare that by not answering a media request for a painting it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xliii.**      Declare that not providing Due Process to Mr. Merryfield when a painting is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

**xliv.**      Declare that by not answering a media request for a painting within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**xlv.**      Declare that Policy 5.18 is vague and ambiguous in that it does not define the term drawing, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**xlvi.**      Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to drawings.

xlvii.      Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning drawings.

xlviii.      Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a drawing inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

xlix.      Declare that once a drawing is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

l.      Declare that a blanket ban on all drawings not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

li.      Declare that there is no industry standard rating for drawings and thus the Defendant(s) have enacted a policy whereby all drawings are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lii.      Declare that by not answering a media request for a drawing it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

liii.      Declare that not providing Due Process to Mr. Merryfield when a drawing is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

liv.      Declare that by not answering a media request for a drawing within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lv.      Declare that Policy 5.18 is vague and ambiguous in that it does not define the term writing, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

lvi.      Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to writings.

lvii.      Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning writings.

lviii.      Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a writing inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

lix.        Declare that once a writing is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lx.        Declare that a blanket ban on all writings not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxi.        Declare that there is no industry standard rating for writings and thus the Defendant(s) have enacted a policy whereby all writings are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxii.        Declare that by not answering a media request for a writing it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxiii.        Declare that not providing Due Process to Mr. Merryfield when a writing is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

lxiv.        Declare that by not answering a media request for a writing within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxv.        Declare that censorship of all writing(s) is unconstitutional under the First and Fourteenth Amendment of the United States Constitution for Mr. Merryfield has the right to freely communicate.

lxvi.        Declare that Policy 5.18 is vague and ambiguous in that it does not define the term picture, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

lxvii.        Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to pictures.

lxviii.        Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning pictures.

lxix.        Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a picture inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

lxx.        Declare that once a picture is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxxi.        Declare that a blanket ban on all pictures not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxxii.       Declare that there is no industry standard rating for pictures and thus the Defendant(s) have enacted a policy whereby all pictures are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxxiii.      Declare that by not answering a media request for a picture it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxxiv.       Declare that not providing Due Process to Mr. Merryfield when a picture is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

lxxv.        Declare that by not answering a media request for a picture within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxxvi.       Declare that Xan Bowersox violated Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution, by seizing Mr. Merryfield's mail without providing Due Process and letting Mr. Merryfield see it.

lxxvii.      Declare that Elizabeth Keller violated Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution, by seizing Mr. Merryfield's mail without providing Due Process.

lxxviii.     Declare that Daphne Norez carried out an unlawful denial of pictures for Mr. Merryfield in violation of his rights under the Fourteenth Amendment of the United States Constitution.

lxxix.       Declare that the pictures denied by Pam Middleton and Daphne Norez contain no nudity.

lxxx.        Declare that Pam Middleton and Daphne Norez read Mr. Merryfield's mail, the pictures, in violation of his rights under the First and Fourteenth Amendment of the United States Constitution.

lxxxi.       Declare that Dr. Rebecca Farr violated Mr. Merryfield's Due Process rights by not allowing him to see the evidence during the hearing she provided in violation of the Fourteenth Amendment of the United States Constitution.

lxxxii.      Declare that Dr. Rebecca Farr violated Mr. Merryfield's Due Process rights by not allowing him to question or have present Daphne Norez or Pam Middleton during the hearing she provided in violation of the Fourteenth Amendment of the United States Constitution.

lxxxiii.    Declare that if the Defendant(s) retaliate for the receipt of pictures that denies or prevents his ability to regain freedom would and will violate his First and Fourteenth Amendment rights under the United States Constitution.

lxxxiv.    Declare that Policy 5.18 is vague and ambiguous in that it does not define the term movie, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

lxxxv.    Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to movies.

lxxxvi.    Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning movies.

lxxxvii.    Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a movie inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

lxxxviii.    Declare that once a movie is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

lxxxix.    Declare that a blanket ban on all movies not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

xc.    Declare that there is no industry standard rating for movies and thus the Defendant(s) have enacted a policy whereby all movies are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

xci.    Declare that by not answering a media request for a movie it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

xcii.    Declare that not providing Due Process to Mr. Merryfield when a movie is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

xciii.    Declare that by not answering a media request for a movie within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

xciv.    Declare that society through their rating board, Motion Picture Association (MPA) declares that no movie Rated G, PG, PG13, or R will be deemed to have or contain sexually explicit material.

xcv.        Declare that Policy 5.18 is vague and ambiguous in that it does not define the term television show on DVD or Blu-Ray format, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

xcvi.       Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to television show on DVD or Blu-Ray formats.

xcvii.      Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning television show on DVD or Blu-Ray formats.

xcviii.     Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a television show on DVD or Blu-Ray format inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

xcix.       Declare that once a television show on DVD or Blu-Ray format is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

c.          Declare that a blanket ban on all television show on DVD or Blu-Ray formats not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

ci.         Declare that there is no industry standard rating for television show on DVD or Blu-Ray formats and thus the Defendant(s) have enacted a policy whereby all television show on DVD or Blu-Ray formats are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cii.        Declare that by not answering a media request for a television show on DVD or Blu-Ray format it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

ciii.       Declare that not providing Due Process to Mr. Merryfield when a television show on DVD or Blu-Ray format is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

civ.        Declare that by not answering a media request for a television show on DVD or Blu-Ray format within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cv.         Declare that televisions shows on DVD and Blu-Ray format do have an industry standard rating provided by the FCC.

cvi.     Declare that society through their rating board, FCC, declares that no sexually explicit content will be shown on cable television channels, outside of premium channels such as HBO, Showtime, etc.

cvii.    Declare that denial of the ability to watch *Yellowstone* violates Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution as it is not applied to his criminal counterparts.

cviii.   Declare that blocking Channels on the cable television provided to Mr. Merryfield violates his rights under the First and Fourteenth Amendment of the United States Constitution.

cix.     Declare that to require Mr. Merryfield to pay for cable television and have no say in what is provided or blocked violates his rights under the First and Fourteenth Amendment of the United States Constitution.

cx.      Declare that if there is a block on the cable television system Mr. Merryfield is first entitled to notice and due process or his rights under the First and Fourteenth Amendment of the United States Constitution is violated.

cxi.     Declare that if Mr. Merryfield is required to continue to pay for what is provided on cable television in his room he is entitled to have a say on what channels there are and whether or not any block is present or his rights under the First and Fourteenth Amendment of the United States Constitution is violated.

cxii.    Declare that banning any show on the Food Network is a violation of Mr. Merryfield's rights under First and Fourteenth Amendment of the United States Constitution.

cxiii.   Declare that concerning televisions series' or movies distributed on DVD or Blu-Ray, the case is not required to contain a rating and this is not a valid reason to deny said television series or movies from Mr. Merryfield and if allowed violates his rights under the First and Fourteenth Amendment of the United States Constitution.

cxiv.    Declare that *Station 19* Season 1 is not sexually explicit, does not contain any nudity, and there is no just cause to deny Mr. Merryfield from owning or possessing said TV series on DVD or Blu-Ray.

cxv.     Declare that Pam Middleton violated Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution when she refused to provide Due Process for the restriction of *Station 19* Season 1.

cxvi.    Declare that Keri Applequist improperly found that *Station 19* Season 1 was asexually explicit.

cxvii.         Declare that *Station 19* Season 2 is not sexually explicit, does not contain any nudity, and there is no just cause to deny Mr. Merryfield from owning or possessing said TV series on DVD or Blu-Ray.

cxviii.         Declare that Pam Middleton violated Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution when she refused to provide Due Process for the restriction of *Station 19* Season 2.

cxix.         Declare that Keri Applequist improperly found that *Station 19* Season 2 was asexually explicit.

cxx.         Declare that *Station 19* Season 3 is not sexually explicit, does not contain any nudity, and there is no just cause to deny Mr. Merryfield from owning or possessing said TV series on DVD or Blu-Ray.

cxxi.         Declare that Pam Middleton violated Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution when she refused to provide Due Process for the restriction of *Station 19* Season 3.

cxxii.         Declare that Keri Applequist improperly found that *Station 19* Season 3 was asexually explicit.

cxxiii.         Declare that Kelsey Fleet has and continues to violate Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution by not approving or denying or providing due process for *Chicago Med.*

cxxiv.         Declare that Kelsey Fleet has and continues to violate Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution by not approving or denying or providing due process for *Chicago PD.*

cxxv.         Declare that Kelsey Fleet has and continues to violate Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution by denying *Defiance* and then not providing a reason why or any form of Due Process.

cxxvi.         Declare that the TV Series *Good Trouble* does not contain nudity.

cxxvii.         Declare that Kelsey Fleet has and continues to violate Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution by denying *Good Trouble* and then not providing any form of Due Process.

cxxviii.         Declare that Policy 5.18 is vague and ambiguous in that it does not define the term video game, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

cxxix.      Declare that Policy 5.18, through requiring use of a select few vendors, denies Mr. Merryfield's First Amendment rights under the United States Constitution as it denies access to video games.

cxxx.      Declare that policy 5.18, through use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning video games.

cxxxi.      Declare that Policy 5.18 is vague and ambiguous as it does not clearly define the criteria for what the exact guidelines or rules are that make a video game inappropriate, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

cxxxii.      Declare that once a video game is approved, said decision or revocation cannot occur without violating Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxxxiii.      Declare that a blanket ban on all video games not containing an industry standard rating violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxxxiv.      Declare that there is no industry standard rating for video games and thus the Defendant(s) have enacted a policy whereby all video games are banned in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxxxv.      Declare that by not answering a media request for a video game it is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxxxvi.      Declare that not providing Due Process to Mr. Merryfield when a video game is denied violates his rights under the Fourteenth Amendment of the United States Constitution.

cxxxvii.      Declare that by not answering a media request for a video game within thirty days of submission is a denial of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxxxviii.      Declare that an outright ban on all video game systems other than the Original XBOX is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxxxix.      Declare that to allow one set of persons in secure confinement to own something and not all persons in secure confinement violates Mr. Merryfield's rights to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

cxl.        Declare that an outright ban on all PC games violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxli.        Declare that any video game rated E, E10+, T, or M, does not contain sexually explicit content.

cxlii.        Declare that denial of a video game based solely on the words in the rating descriptor box is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxliii.        Declare that denial of *Donkey Kong* violates Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxliv.        Declare that the ESRB provides a rating on what is appropriate for a child not an adult and by the Defendant(s) not keeping this in mind have violated their own policy by forcing Mr. Merryfield to purchase only games that are child oriented, if it is a necessary part of treatment.

cxlv.        Declare that a blanket ban on all games Rated M is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

cxlvi.        Declare that the video game titled *Terraria* does not contain any sexually explicit content.

cxlvii.        Declare that Kelsey Fleet by not answering Mr. Merryfield's request to purchase the game violated and continues to violate his rights under the First and Fourteenth Amendment of the United States Constitution.

cxlviii.        Declare that Jason Jester by not answering Mr. Merryfield's request to purchase the game violated and continues to violate his rights under the First and Fourteenth Amendment of the United States Constitution.

cxlix.        Declare that Krista Casmaer by not answering Mr. Merryfield's request to purchase the game violated and continues to violate his rights under the First and Fourteenth Amendment of the United States Constitution.

cl.        Declare that Cristina Sanchez by not answering Mr. Merryfield's request to purchase the game violated and continues to violate his rights under the First and Fourteenth Amendment of the United States Constitution.

cli.        Declare that Pam Middleton violated Mr. Merryfield's rights under the Declare that Kelsey Fleet by not answering Mr. Merryfield's request to purchase the game violated and continues to violate his rights under the First and Fourteenth Amendment of the United States Constitution by denying the video game *Terraria* for the sole reason of what was stated in the rating descriptor box.

**clii.**     Declare that Pam Middleton has and continues to violate Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution by denying *Terraria* and then not providing any form of Due Process.

**cliii.**    Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually deny all M Rated Games in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**cliv.**     Declare that a blanket ban on all video games with the words "suggestive themes" in the rating descriptor box is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**clv.**      Declare that if the facility criteria is no representation, picture, image or silhouette of a child then it must universally apply to all that the Defendant(s) provide Mr. Merryfield or it is a violation of his rights under the First and Fourteenth Amendment of the United States Constitution.

**clvi.**     Declare that a short or brief showing of a butt cheek does not make an item sexually explicit. In so doing find that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually violated Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution by denying all media where a butt cheek is shown.

**clvii.**    Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually deny the ability to have a laptop or desk top computer in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**clviii.**   Declare that to allow one set of persons in secure confinement to own a laptop or desktop computer and not all persons in secure confinement violates Mr. Merryfield's rights to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

**clix.**     Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually deny the ability to have a telephone book in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**clx.**     Declare that Policy 5.18 is vague and ambiguous in that it does not define the term telephone books, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**clxi.**     Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually deny the ability to have a legal directory is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**clxii.**     Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually deny the ability to have any item that has a LAN or telephone port is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**clxiii.**     Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually deny the ability to have a cell phone is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**clxiv.**     Declare that to allow one set of persons in secure confinement to own a cell phone and not all persons in secure confinement violates Mr. Merryfield's rights to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

**clxv.**     Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard together and individually deny the ability to see episodes of *Yellowstone* is a violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**clxvi.**     Declare that the term read means to ascertain the contents of a writing, a document or printed matter.

**clxvii.**     Declare that looking at the contents of Mr. Merryfield's mail (Pictures, Letters, etc.) is reading his mail in violation of his rights under the First and Fourteenth Amendment of the United States Constitution.

**clxviii.**     Declare that Mr. Merryfield has a right to not have his mail read and at no time has Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard, provided the necessary Due Process to remove this right.

**clxix.**       Declare that Policy 5.18 is vague and ambiguous in that it does not define the term read, in violation of Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**clxx.**       Declare that flipping through any piece of mail, inclusive of catalogs, movies, magazines, newspapers, etc., is reading the mail.

**clxxi.**       Declare that on January 6, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxii.**       Declare that on January 20, 2021, Linda Kidd violated Mr. Merryfield's rights when she read his mail.

**clxxiii.**       Declare that on January 26, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxiv.**       Declare that on February 16, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxv.**       Declare that on March 12, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxvi.**       Declare that on March 25, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxvii.**       Declare that on March 20, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxviii.**       Declare that on April 13, 2021, Kristina Rose violated Mr. Merryfield's rights when she read his mail.

**clxxix.**       Declare that on April 21, 2021, Kristina Rose violated Mr. Merryfield's rights when she read his mail.

**clxxx.**       Declare that on May 11, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxxi.**       Declare that on May 17, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxxii.**       Declare that on May 18, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxxiii.**       Declare that on May 19, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

**clxxxiv.**       Declare that on June 15, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

clxxxv.        Declare that on June 17, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

clxxxvi.        Declare that on November 16, 2021, Kristina Rose violated Mr. Merryfield's rights when she read his mail.

clxxxvii.        Declare that on December 27, 2021, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

clxxxviii.        Declare that on January 10, 2022, Kristina Rose violated Mr. Merryfield's rights when she read his mail.

clxxxix.        Declare that on October 21, 2022, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

cxc.        Declare that on October 28, 2022, Xan Bowersox violated Mr. Merryfield's rights when she read his mail.

cxci.        Declare that on January 4, 2023, Xan Bowersox violated Mr. Merryfield's rights when she read his mail.

cxcii.        Declare that on January 9, 2023, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

cxciii.        Declare that on January 17, 2023, Xan Bowersox violated Mr. Merryfield's rights when she read his mail.

cxciv.        Declare that on January 25, 2023, Elizabeth Keller violated Mr. Merryfield's rights when she read his mail.

cxcv.        Declare that on February 7, 2023, Xan Bowersox violated Mr. Merryfield's rights when she read his mail.

cxcvi.        Declare that when any Defendant or staff violate or fail to follow a policy within the facility they are carrying out an unlawful act that deprives Mr. Merryfield of his rights under the First and Fourteenth Amendment of the United States Constitution.

cxcvii.        Declare that Pam Middleton, Shawn Dixon, Daphne Norez, and Kelsey Fleet read Mr. Merryfield's mail in violation of his rights under the First and Fourteenth Amendment of the United States Constitution.

cxcviii.        Declare that Pam Middleton, Daphne Norez, Shawn Dixon, and Kelsey Fleet did not provide any form of Due Process prior to reading Mr. Merryfield's mail.

cxcix.        Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard, had a duty to protect and enforce Mr. Merryfield's rights and chose instead to violate those rights.

**cc.** Declare that in order to deem an item sexually explicit the item must meet the following requirements: The material is produced for the sole purpose of sexual arousal or gratification *and* either has nudity or graphic depiction of a sex act.

**cci.** Declare that Defendant(s) definition of sexually explicit is more stringent than Mr. Merryfield's adult, juvenile, or federal criminal counterparts would face in violation of his rights under the First and Fourteenth Amendment of the United States Constitution.

**ccii.** Declare that Pam Middleton, Daphne Norez, Seth Osborn, Sharon Surface, Linda Kidd, Shawn Dixon, Keri Applequist, Dr. Christine Mohr, Gabriel Rop, and Laura Howard, have a duty to provide Due Process to the entity that made or distributed the media and their failure to do so violates the rights set forth in the First and Fourteenth Amendment of the United States Constitution.

**cciii.** Declare that the limited vendor policy is a monopoly in violation of the United States Constitution.

**cciv.** Declare that there is no need for a vendor limit based on the security protocols in place for mail and it is egregious and violates Mr. Merryfield's rights under the Fourteenth Amendment of the United States Constitution.

**ccv.** Declare that if the vendor limit is applicable and allowed to remain that any item purchased at Walmart.com is allowed for Mr. Merryfield has no right or ability to control Wal-Mart's fulfillment or method of fulfillment for the order.

**ccvi.** Declare that if the vendor limit is applicable and allowed to stand the Defendant(s) must provide access to the method (i.e. internet, mail, telephone) for which the vendor takes orders or it is an outright denial in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**ccvii.** Declare that K.S.A. 59-29a22(b)(15)(c) is vague and ambiguous as it does not define the term sexually explicit in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

**ccviii.** Declare that to provide civil commitments in Kansas the same property rights as a citizen but then not provide the same to Mr. Merryfield violates his right to equal protection under the Fourteenth Amendment of the United States Constitution.

**ccix.** Declare that K.S.A. 59-29a22 is unconstitutional in that it is vague and ambiguous by not defining the term "read" in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

ccx.      Declare that K.S.A. 59-29a22 is unconstitutional in that it is vague and ambiguous by not defining the term "sexually explicit" in violation of Mr. Merryfield's rights under the First and Fourteenth Amendment of the United States Constitution.

ccxi.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield possession or ownership of any movie rated G, PG, PG13, or R by the Motion Picture Association.

ccxii.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield possession or ownership of any video game rated E, T, or M by the ESRB.

ccxiii.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield possession or ownership of any movie rated TV-Y, TV-Y7, TV-G, TV-PG, TV-14, and TV-MA by the FCC.

ccxiv.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of any picture that is not nude defined to be wherein the vagina, anus, or areola is not covered.

ccxv.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of any writing.

ccxvi.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of any book.

ccxvii.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of any magazine that does not have nudity defined to be wherein the vagina, anus, or areola is not covered. In addition no magazine tailored solely to the prurient interest will be allowed.

ccxviii.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of any painting.

ccxix.      . Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of any drawing.

ccxx.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of any video game system.

ccxxi.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of a cell phone.

ccxxii.      Permanently enjoin the Defendant(s) from denying Mr. Merryfield ownership and possession of a laptop computer or desktop computer.

ccxxiii.      Order the Defendant(s) to put a constitutionally valid Due Process system in place for any censorship decision, that includes: (1) A face to face hearing; (2) The right to call witnesses; (3) The right to question the original decision maker; and (4) The right to see the evidence. In addition include any other rights the court finds appropriate and necessary.

**ccxxiv.**      After the trial of this matter, if necessary, award to Plaintiff compensatory, nominal, and punitive damages are necessary against the Defendants.

**ccxxv.**      Order the Defendants to pay the Court any costs expended on this case including but not limited to filing fees, and service fees.

**ccxxvi.**      Grant any other necessary and prudent relief found necessary to remedy the violations of the United States Constitution.

Dustin J Merryfield
1301 K264 HWY
Larned Kansas 67550
Telephone: (620) 285-4660 ext. 4