### In the United States District Court
### for the District of Kansas

————————

Case No. 23-cv-03041-TC-TJJ

————————

DUSTIN J. MERRYFIELD,

*Plaintiff*

v.

KELSEY FLEET, ET AL.,

*Defendants*

————————

### MEMORANDUM AND ORDER

Dustin Merryfield, who is civilly committed under the Kansas Sexually Violent Predator Act, Kan. Stat. Ann. §§ 59-29a01–22, sued various Kansas state officials for violating his rights under the First and Fourteenth Amendments to the United States Constitution. Doc. 1. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 29. For the following reasons, their motion is granted.

### I

### A

**1.** A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the pleadings alone. But "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

**2.** Merryfield proceeds pro se. Federal courts considering pleadings filed by pro se litigants must construe those pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on a litigant's behalf, assume facts not pled, or act as his or her advocate. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

Kansas commits some sexually violent predators for long-term care and treatment. *Kansas v. Hendricks*, 521 U.S. 346, 351–52 (1997). It does so using the Sexually Violent Predator Act. Kan. Stat. Ann. § 59-29a01 *et seq*. Merryfield is committed under the Act, and has been for

more than 20 years. Doc. 1 at 6;[1] *see also generally Merryfield v. Howard*, No. 23-3060, 2024 WL 358241, at *1 (10th Cir. Jan. 31, 2024).

The Act provides detainees a series of statutory rights. Kan. Stat. Ann. § 59-29a22(b). These range from a right "[t]o receive adequate treatment appropriate for [their] condition" to a right "[t]o send and receive mail with reasonable limitations." *Id.* at §§ 59-29a22(b)(3), (15). A detainee's statutory rights can be withdrawn by "the superintendent of [a] facility or the superintendent's designee," but only "for cause." *Id.* at § 59-29a22(c)(1). A superintendent must inform the detainee "in writing of the grounds for withdrawal" and provide an "opportunity for a review … in an informal hearing." *Id.*

This lawsuit concerns access to media. Merryfield's facility permits him to possess and view a wide range of media. Doc. 1 at 6–32 (listing CDs, books, magazines, paintings, drawings, writings, pictures, movies, television shows, and video games). Defendants apparently manage these things with a "media policy." *Id.* at 6 (referencing "Policy 5.18"). The policy prohibits sexually explicit material. *See id.* It defines that term, but "leaves it[s enforcement] to the discretion of the therapist who is assigned to Mr. Merryfield." *Id.*

A detainee's therapist does not make every relevant decision. Some things are decided in advance, like which vendors a detainee may use. *See* Doc. 1 at 6 (listing the approved CD vendors). And not all of a vendor's products are available. Items must have "an industry standard rating before [they] can be approved." *Id.* (stating that some items, like books and magazines, lack industry standard ratings).

In this suit, Merryfield sued fifteen employees associated with the Sexual Predator Treatment Program, the State of Kansas, and "Jane and John Does." Doc. 1 at 1. The crux of Merryfield's complaint is that Defendants choose to deny him some items "even though the only requirement[] under the Act" is that he be denied "sexually explicit material." *Id.* at 5. For example, he requested certain CDs which have not been either approved or denied. *Id.* 8–10. Other times, he received unfavorable decisions. *Id.* at 17–19 (describing a dispute over pictures received in the mail). This is unnecessary censorship,

---

[1] All citations are to the document and page number assigned in the CM/ECF system.

Merryfield says. *Id.* at 5. He also says he raises a "constitutional challenge to the face of K.S.A. § 59-29a22," but does not develop this point.[2] *Id.*

Merryfield lists four counts. Count I alleges that Defendants violated the Due Process Clause. Doc. 1 at 5. Counts II and III allege First Amendment violations. *Id.* And Count IV alleges that Defendants violated the Equal Protection Clause. *Id.* These counts eventually become 226 separate requests for relief. *Id.* at 48–67. Some of the requests reach issues not captured by Merryfield's claims. *E.g., id.* at 49 ("Declare that Policy 5.18, through requiring use of a select few vendors, violates all provisions in the United States Constitution concerning free commerce, the right to choose, and is a state sanctioned monopoly, concerning books."). Defendants moved to dismiss Merryfield's claims, however they appear in the Complaint. Doc. 29. Merryfield responded, Doc. 30, and Defendants replied to that response, Doc. 31.

## II

Defendants ask that Merryfield's claims be dismissed as precluded by the *Rooker-Feldman* doctrine and for failure to state a claim. The *Rooker-Feldman* doctrine does not preclude Merryfield's claims. But because his complaint fails to state a claim, Defendants' motion to dismiss, Doc. 29, is granted.

## A

Defendants argue that the *Rooker-Feldman* doctrine precludes Merryfield's suit. Doc. 29 at 14. The *Rooker-Feldman* "doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

---

[2] Merryfield only mentions his "constitutional challenge to the face of K.S.A. § 59-29a22" once. Doc. 1 at 5. He then relies on Section 59-29a22 as a source of substantive rights. *See, e.g.*, Doc. 30 at 7. Even assuming he adequately raised this issue, Section 59-29a22 can be validly applied to Merryfield. *See Merryfield v. Jordan*, 584 F.3d 923, 924 (10th Cir. 2009); *Kansas v. Hendricks*, 521 U.S. 346, 371 (1997). And, a facial challenge would fail even if it were considered. *See Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (explaining that a facial challenge requires a plaintiff to prove that a statute is not valid in any application).

544 U.S. 280, 284 (2005)). To be sure, Merryfield has a long history of litigation in state court. *See, e.g., Matter of Merryfield*, 518 P.3d 459 (Kan. Ct. App. 2022), *review denied* (Jan. 31, 2023) (per curiam) (table) ("Merryfield has a long and varied history with our court. In this most recent chapter, he mainly challenges the district court's denial of his petition to be returned to transitional release under the Kansas Sexually Violent Predator Act."); *Merryfield v. State*, 241 P.3d 573, 575 (Kan. Ct. App. 2010); *Merryfield v. State*, 390 P.3d 915 (Kan. Ct. App. 2017) (table); *Merryfield v. Bruffett*, 389 P.3d 225 (Kan. Ct. App. 2017) (table). And his state court cases decided issues that resemble the ones he raises now. For instance, one case considered whether Kansas denied Merryfield due process when it failed to deliver his mail on the day that it arrived. *Merryfield v. Keck*, 388 P.3d 630 (Kan. Ct. App. 2017) (table).

Defendants argue that these similarities implicate the *Rooker-Feldman* doctrine, because "Plaintiff's claims have already been raised—either by him directly or by others in the SPTP program." Doc. 29 at 15. According to Defendants, "[t]his Court should respect the holdings of Kansas courts finding no constitutional violations within the same statutes at issue." *Id.* But "*Rooker-Feldman* is not simply preclusion by another name." *Lance*, 546 U.S. at 466. It "is a narrow doctrine" that intervenes only to stop a plaintiff from "inviting district court review and rejection of [state court] judgments." *Id.* at 464. Defendants do not explain which state court judgments would be called into question by a decision in this case. Doc. 29 at 14–15. And judgments in third parties' cases never implicate the doctrine, *Lance*, 546 U.S. at 466, so it is irrelevant for *Rooker-Feldman* purposes that "Plaintiff's claims have already been raised … by others in the SPTP program," Doc. 29 at 15. Although the constellation of state-court cases Merryfield has litigated includes some First and Fourteenth Amendment claims, none of them resolved the issues he raises now. Thus, *Rooker-Feldman* does not bar his claims. *Cf. Campbell v. City of Spencer*, 682 F.3d 1278, 1284–85 (10th Cir. 2012) (concluding that *Rooker-Feldman* barred a claim making a "direct attack on the state court's judgment" but not another claim that the plaintiff "could raise … even if there had been no state-court proceedings").

## B

Merryfield argues that Defendants violate the First and Fourteenth Amendments in several loosely connected ways. Doc. 1 at 5. But his claims fail because he has failed to allege facts that make his claims plausible.

**1**

All of Merryfield's constitutional claims are asserted by way of Section 1983. *See* Doc. 1 at 5 (citing 42 U.S.C. § 1983). Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. V. Talevski*, 599 U.S. 166, 174–75 (2023). To state a viable Section 1983 claim, a plaintiff must establish that a person acting under color of state law caused him or her to be deprived of a right secured by the Constitution or laws of the United States. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

Merryfield argues, at least in part, that he was deprived of his right to procedural due process. Such claims require plaintiffs to show that they have a constitutionally cognizable liberty or property interest with which a state interfered without the appropriate level of process. *See Bd. Of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). States have extra latitude to interfere with prisoners' liberty and property interests. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (discussing *Bell v. Wolfish*, 441 U.S. 520 (1979)). They may deprive prisoners through "prison conditions or a prison regulation" without implicating procedural due process concerns, unless a deprivation "imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin*, 515 U.S. at 484). Merryfield is not in prison, but this standard is still appropriate. *See Kansas v. Hendricks*, 521 U.S. 346, 371 (1997) (upholding Kansas's civil commitment scheme against a substantive due process challenge); *Bell*, 441 U.S. at 561 (explaining when the government may limit a pretrial detainee's liberty); *Merryfield v. Howard*, No. 21-3255, 2023 WL 2682353, at *11 (D. Kan. Mar. 29, 2023) (acknowledging Merryfield's unique status but nonetheless applying "case law governing restrictions on possessing property for criminally-convicted prisoners").

**2**

**a.** Start with Merryfield's delayed process arguments. He objects that he is effectively denied media—books, music, and so on—because

his requests are never approved or denied. *See, e.g.*, Doc. 1 at 24 ("Pam Middleton has and continues to refuse to issue a rights restriction or any form of Due Process for the censorship and restriction of the item."); *see also* Doc. 30 at 2 ("The complaint alleges the denial of Due Process in a timely manner…."). Defendants must either approve or deny, he says. Inaction, he believes, is not an option.

This argument is not viable. Kansas's statutory scheme defines certain procedures that will be employed when permitting or denying requests Merryfield may make while detained. *See* Kan. Stat. Ann. § 59-29a22(c)(1). But Kansas does not deny due process by failing to follow its statutory procedures, because Merryfield has not established that the statutory scheme creates any protected interest to which due process would apply: "[D]enying process, however mandatory under state law, [does not] itself deny liberty." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). This is because "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Merryfield does not assert any such substantive interest. His claim is really that Defendants are violating a state law or one of their own policies. And "alleged violations of state statutes and prison regulations" do not state "cognizable claim[s] under [Section] 1983." *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002); *see also Merryfield v. Howard*, No. 21-3255, 2023 WL 2682353, at *9 (D. Kan. Mar. 29, 2023) (reaching this conclusion in one of Merryfield's analogous cases).

**b.** The same goes for the mail-reading allegations. Merryfield contends that "K.S.A. [§] 59-29a22(b)(15)(B) grants [him] the liberty interest to not have his mail read by any staff or other person working in the Kansas Sexual Predator Treatment Program." Doc. 1 at 35. And Defendants have "never complied with K.S.A. [§] 59-29a22(c) nor provided any form of Due Process prior to the incidents of censorship[] carried out by reading his mail."[3] *Id.* Neither objection describes a constitutionally secured liberty interest.

Merryfield has a state-statutory right "[t]o send and receive mail with reasonable limitations." Kan. Stat. Ann. § 59-29a22(b)(15). And on top of those limitations, "[a] person's mail is subject to physical

---

[3] Merryfield mentions censorship, but this is a procedural due process argument. *See* Doc. 1 at 35 (referring to "Due Process" and "liberty interest[s].")

examination and inspection for contraband." *Id.* Merryfield says that the facility must "compl[y] with K.S.A. 59-29a22(c) and provide[] Due Process" before examining his mail. Doc. 1 at 35. This describes, at most, an entitlement to state process: Merryfield wants Defendants to follow state law before they read his mail. But Merryfield has no constitutionally secured liberty interest in forcing Defendants to follow that state-law procedure. *See Templeman*, 16 F.3d at 371. Moreover, the statute itself provides that mail will be inspected. Kan. Stat. Ann. § 59-29a22(b)(15). So even if the statute created a liberty interest, it builds inspection into that interest. *See id.*

**c.** Finally, consider Merryfield's "blanket ban" objection. Doc. 1 at 32–35. As a general matter, Kansas does not allow anyone at Merryfield's facility to access "any video game rated M," "any form of picture … of a child," or any "episodes of the television series *Yellowstone*." *See id.*; Doc. 29 at 9. These limits are not individualized, but Merryfield says they should be. Doc. 30 at 8.

Individualized decisions are part of Kansas's scheme. For example, Subsection (c)(1) requires individualized process before a detainee's rights are withdrawn. The detainee gets an explanation in writing and an opportunity for review. Kan. Stat. Ann. § 59-29a22(c)(1). Sometimes a facility withdraws rights from every detainee, though, not just one of them. In those cases, Section 59-29a22 lets a facility skip the individualized Subsection (c)(1) process. Thus, "when [a] facility makes an administrative decision that applies equally to all persons and there is a legitimate governmental reason for the decision," it need only issue notice of the decision. Kan. Stat. Ann. § 59-29a22(c)(2). Merryfield knows that Defendants withhold pictures of children (and episodes of *Yellowstone*) using the Subsection (c)(2) process. *See* Doc. 30 at 9. But he argues that Defendants cannot constitutionally avail themselves of Subsection (c)(2) and must instead make "individual therapy based decision[s]." *Id.*

Alleged violations of state statutes guaranteeing certain procedures, standing alone, are insufficient to establish a liberty interest. Merryfield's blanket ban argument, like his other arguments, is attempting to create a protected liberty interest out of state process. Merryfield confirms as much when he argues that he has a "state created liberty interest[]" in "individual treatment," among other things. Doc. 30 at 8. Kansas might choose to promise certain procedures before taking certain actions, but that choice does not create a right cognizable under the Fourteenth Amendment. As before, failing to adhere to a

state procedure does not create a constitutionally enforceable liberty interest. *Templeman*, 16 F.3d at 371.

**3**

Merryfield also argues that Defendants violate the First Amendment by censoring his media and restricting his freedom to associate. Doc. 1 at 5 (describing Counts II and III). These claims are not viable.

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 404–06 (1989) (applying *Turner* to "incoming publications"). *Turner* operationalizes this standard with four factors. 482 U.S. at 89–91. But "in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest." *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (citation and internal quotation marks omitted).

As a general matter, states have a legitimate penological interest in withholding sexually explicit materials from prisoners. *See Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1155 (10th Cir. 2007) (finding that a "policy banning receipt of 'sexually explicit material' and 'technical publications' satisfies *Turner*"). That interest is heightened when considering those deemed to be sexually violent predators. *Seling v. Young*, 531 U.S. 250, 261–62 (2001) (noting that "sexually violent predators in Kansas" are "held in a segregated unit within the prison system" in part because "the persons confined [are] dangerous to the community") (citations omitted). In Kansas, Defendants implement this legitimate interest in part by limiting Merryfield to certain vendors. Doc. 29 at 9. Their strategy is not uncommon. *See Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989) (concluding that restrictions imposed publication-by-publication complied with *Turner*); *Payne v. Friel*, No. 2:04-CV-844, 2007 WL 1100420, at *8 (D. Utah Apr. 10, 2007), *aff'd in relevant part*, 266 F. App'x 724 (10th Cir. 2008) (concluding that vendor restrictions comply with *Turner* and *Thornburgh*).

More importantly, Merryfield does not "plead facts from which a plausible inference can be drawn that the [challenged] action was not reasonably related to a legitimate penological interest." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). He describes Kansas's policies in detail. Doc. 1 at 6–32. And he notes when this policy may be ineffective. *E.g.*, *id.* at 23 (explaining that Defendants permit him to watch

*Law and Order SVU* but not *Yellowstone*). But he offers no facts to suggest that Defendants' vendor policy, which implements their restriction on sexually explicit materials, is unrelated to legitimate penological interests.

Merryfield's freedom of association claim fails for similar reasons. He says "he is unlawfully denied … access to" things like "[b]ooks, [m]agazines, [p]aintings … [and] [v]ideo games." Doc. 1 at 10. He reasons that since "[e]ach of these are mediums in which ideas are expressed … [they are at] the heart of the First Amendment Freedom of Association protection." *Id.* Defendants do not ban these items from their facility. They restrict some items, though, and require Merryfield to seek approval before receiving them. *E.g.*, Doc. 1 at 7 (discussing CDs). Reading his complaint generously, Merryfield seems to say that he must be able to associate with any vendor (and, importantly, any of its products) because these are associations necessary to his exercise of enumerated First Amendment rights. *Cf. Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1080 (10th Cir. 2011) (explaining that freedom of association in the "instrumental sense … relates to associations necessary to engage in the enumerated First Amendment rights") (citation and internal quotation marks omitted). Merryfield's relationships with vendors of media while detained as a sexually violent offender are probably not associations protected by the First Amendment. *See id.* at 1081 (assuming without deciding that retention of an attorney was association because if it were not protected association it "would receive no First Amendment protection whatsoever"); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). But even if they are, such associations may be curtailed to serve "legitimate penological interests." *Turner*, 482 U.S. at 89. Merryfield offers no facts to suggest that his rights have been improperly curtailed in his case. If anything, he pled facts to *support* the state's case. Doc. 1 at 42 (explaining that "the facility restricted [vendors]" because "[i]ndividuals were repackaging items with contraband," among other things).

### 4

Finally, Merryfield claims that Defendants violate the Fourteenth Amendment when they treat him differently from his "juvenile criminal counterparts," "adult criminal counterparts," and "federal criminal counterparts." Doc. 1 at 40–42. These prisoners have an allegedly broader right to access media. *Id.* And really, Merryfield says, everyone has a broader right to access media than he does. He therefore argues that he should be treated as a "class-of-one." Doc. 30 at 2–3.

To prevail under that theory, "a plaintiff must allege and prove (1) 'that [he or she] has been intentionally treated differently from others similarly situated' and (2) 'that there is no rational basis for the difference in treatment.'" *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1253 (10th Cir. 2016) (alteration in original) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). These requirements are strict. For example, "a class-of-one plaintiff must identify others similarly situated in every material respect." *Id.* at 1253 (citation and internal quotation marks omitted).

Merryfield fails to "identify others similarly situated in every material respect." *Herbert*, 828 F.3d at 1253 (internal quotation marks omitted). Instead, he describes the treatment of juvenile and adult prisoners, as well as prisoners "housed under [f]ederal custody." Doc. 1 at 40–42. But these prisoners do not set an appropriate baseline. *See Merryfield v. Jordan*, 584 F.3d 923, 925 (10th Cir. 2009) (affirming a district court that dismissed an equal protection claim on the grounds that Merryfield was "not similarly situated to [Kansas state] prisoners").[4] And even if they did set an appropriate baseline, Merryfield makes no attempt to show that Kansas lacks a rational basis for deviating from that baseline in his case. *Cf. Herbert*, 828 F.3d at 1253. There are myriad reasons to treat ordinary prisoners one way and sexually violent detainees another way. *See Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (concluding that Oklahoma had a rational basis to burden aggravated sex offenders more than ordinary sex offenders); *Davis v. Thompson*, No. 19-3051, 2019 WL 6327420, at *5 (D. Kan. Nov. 26, 2019) (similar).

---

[4] Defendants argue that this case, like Merryfield's many other cases, precludes Merryfield from relitigating his Equal Protection arguments. Doc. 29 at 11–12 (referring to collateral estoppel). It is unclear whether these cases in fact decided the issue that Merryfield tries to raise now, since the allegedly settled issue is described at an implausibly high level of generality. *Id.* at 12 ("Plaintiff unsuccessfully litigated the same issue—that provisions of the KSVPA create equal protection violations—against the State."). Nonetheless, it is unnecessary to reach this question, because Merryfield does not state a plausible claim.

**III**

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. 29, is GRANTED.

It is so ordered.


Date: May 7, 2024                   _s/ Toby Crouse_____
                                    Toby Crouse
                                    United States District Judge